The State of Missouri vs. Mix.

THE STATE OF MISSOURI, RESPONDENT, vs. MIX, APPELLANT.

1. When both parties consent to the separation of the jury, before verdict, it is no error in the court to permit it. If a defendant can plead guilty, he can consent to the separation of the jury. Though, in some cases, as, where minors or slaves are indicted, it might be prudent for the court not to act upon the consent, yet, it is matter within its discretion.

2. A few plain propositions, embracing the law upon the facts of the case, are greatly to be preferred in every case, to a long string of instructions, running into each other, and involved in intricacies, requiring as much elucidation as the facts of the cases themselves.

3. If a witness wilfully testifies falsely to any material fact in the case, the jury are authorised to discredit and reject the whole of his testimony.

4. If one pass counterfeit money, and another in any way aids and abets its passage, knowing it to be counterfeit, an intent to defraud may be inferred, and both are guilty.

5. It is wrong to admit illegal evidence, and afterwards exclude it by instructions. The injury may be too deeply fixed in the minds of the jury to be easily eradicated.

6. It is competent for the State to prove, after having shown that the defendant had passed a bank note which was counterfeit, as charged in the indictment, in order to show guilty knowledge in the defendant, that he had passed other counterfeit bank notes, of a similar kind to other persons at different times, before, and subsequent to the indictment.

## APPEAL from St. Louis Criminal Court.

BLENNERHASSETT & SHREVE, for Appellant.

I. It is insisted by the defendant that the evidence does not show any legal guilt in the defendant, Mix. There is no evidence in this case, which shows that defendant knew that Williams was passing counterfeit money, nor even raises a legal presumption of his participation. He did no act, nor said one word to Williams which tends to show his participation or countenance to aid or support Williams. He ran away, or, as other witnesses for the State say, moved away when the officers came up, to avoid being arrested—a movement not at all inconsistent with innocence; and it is urged, that the jury have, from prejudice and errors committed by the court, in the trial, erred in their verdict, and therefore did the court in refusing a new trial.

II. The court erred in permitting the jury that tried this cause, to separate during the progress of the trial. The record shows that consent was given (if consent can be given, which, it is submitted, cannot be given) only at the court room the day the trial commenced. The record also shows that no consent was given to the subsequent separation of the jury, although several adjournments took place during the trial, to which the defendant objected, as will be seen by the subsequent order of the court that they be kept together. Consent that they might separate, cannot be construed into a perpetual separation; for since the last separation, obvious reasons may have impressed the defendant that they should not again separate. The supreme court authoritatively settled this point, and declared that in all cases of felony, if a jury is permitted to separate after they are sworn, the judgment will be reversed; and they proceed upon the idea, not that the jury have been tampered with, but that they may have been tampered with—that they have been exposed to the thousand influences, that contact with the world may produce. See McLean vs. the State, 8 Mo. R. 153.

III. The counsel for the defendant think that the court erred in permitting evidence to go to the jury which is admitted to be illegal, and then attempting to cure the error by instructing the jury to disregard the same. Its prejudicial effect cannot be cured by instructions from the court. The State was permitted, in this case, despite the objection and exception of defendant, to prove that defendant, Mix, told witness some years before, that he (defendant) had been in the Kentucky penitentiary.

The court also permitted the State to show, by witnesses, that the person jointly indicted with the defendant, on the day previous to that on which this offense is charged, passed counterfeit money, when the defendant was not about at all; nor was the jury even instructed to disregard the evidence. Is it any wonder that the defendant was convicted?

The first instruction supposes, that if defendant, Mix was in Williams' company, and knew that Williams was passing counterfeit money, and was near enough to render him assistance, the intent to defraud may be inferred, and this furnishes sufficient evidence upon which to convict. It is thought that this instruction is demurrable, that admitting all that it supposed, the deduction is wrong.

The instruction of the court, that the jury can find the defendant guilty without affixing his punishment, is erroneous: Rev. Code 1835, page 493; McGhee vs. State, 8 Mo. 495.

The court erred in refusing the first instruction asked by defendant, to wit: "If the jury believe from the evidence, that the witness, McAfee, wilfully testified falsely to any material fact in the case, they are authorized to discredit and reject the whole of his testimony." The court attempted to supply the want of this instruction by one given by himself, in which he substantially instructs the jury, that they may believe all that the witness says which is not inconsistent with the testimony: (See instruction of the court.) This instruction does not contain the law; at least, it is very mysterious, not to say absurd. The law declares that a witness' entire statement may be discredited, and, as the defendant insists, requires it to be discredited: that the bond of faith is broken, and no reliance can be given to other statements made by a witness who has once testified falsely and knowingly so. See Stark. Ev., 1 vol. 582, where this language occurs: "As credit of a witness is founded on experience, it follows that a witness who gives false testimony, as to one particular, cannot be credited as to any—upon the principle *falsum in uno, falsum in omnibus.*" Now it will be observed, that the witness McAfee, for the State, was the last witness introduced, and that without his testimony the State did not esteem the case as made out, but relied upon his testimony. This witness was indicted for the same offence. In his cross-examination he admits that he has been engaged in the counterfeiting business, and substantially states, that under promise of discharge from his own indictment, he testifies against the defendant. A *nol. pros.* was entered as to him, and he then testified to several facts in the case, which the witnesses for the defendant contradict, and hence the purtenance of the instruction.

The court is also requested to remark, that the instruction which is said to have been given "in lieu" of the instruction asked by the defendant, does not appear in the record at all; but after the bill of exceptions was made out, the court directed the clerk to make the marginal note, that such an instruction, "in substance," was given by the court. If such an instruction was given, it does not appear any where among the papers of the case.

The counsel think the second instruction asked by defendant, contains the law of accessories.

It is insisted that the court erred in refusing the co-defendant, Williams, to testify. A severance was asked in time, and granted by the court, who, however, has no discretion about it. He was tried separately, and yet the court would not permit the co-defendant to testify on the part of the defendant. This point is conclusively settled in the case of Garret vs. the State, 6 Mo. Rep. 1. This decision has been acquiesced in, since it was made, to the present time; and the court below, after full argument upon the point, for a long time practiced upon it. It would seem that modesty should justify the Hon. Judge of the St. Louis criminal court, whose experience and learning all admit to be quite equal to that of the Hon. Judge of the supreme court, who delivered the opinion in the 6th Mo., in obeying that decision, as an inferior court; but in delivering the opinion in this case, as in all other cases, he expressed himself "to have no doubt about the point."

The counsel for the defendant are aware that the decisions conflict, both in Europe and America; but think, that quite as numerous an array of authorities can be furnished in support of the practice as against it. The decision in 13 Mo. Rep. 30, McMillan vs. the State, discusses the question incidentally. It was not a point in the case nor is it decided. In the syllabus to the case, it is said to be only discussed. His late Honor, who has since retired to the shades of private life, Judge Napton, travelled out of the case to discuss the question not before him; and after discussing the question failed to decide it, and declares that the question is not raised before him, and that he referred to it "only merely to show the unfavorable position such a witness must occupy at best;" thereby conceding the competency, but discussing the credibility of the witness. The chancery practice of discovering testimony has been engrafted upon our administration of justice in civil cases; but this Hon. Court is called upon to retrograde in the practice of elucidating testimony in criminal cases. We respectfully submit, that the ends of justice require the enforcement of the law as it now stands, expounded by the supreme court in 6 Mo. See also, on this point, Greenl. Ev.; Rex vs. Ellis, 1 McNally 55; Russell 597; Jones vs. State of Georgia, 1 Kelley 617; Roscoe Ev., comments on Lafone's cases; 5 Esp. 154; 1 Ch. Crim. L. 605; Roscoe 118; 2 Russ. 597; 2 Hale 281; 1 Hale 305; United States vs. Henry, 4 Wash. Rep. 429.

LACKLAND, for the State.

I. The court did not err in refusing to admit as evidence on the part of the defendant, the conversation between defendant and his co-defendant, Williams. It was not introduced by the State, and was not a part of the *res jestae*, it having occurred at another and different place.

The court did not err in overruling the objection to the question, as to what was found in the possession of the co-defendant, Williams; because the evidence clearly shows, that they were acting in concert, and the possession of one is the possession of both: 2 Greenlf. Ev. sec. 111; American Fur Company vs. United States, 2 Peters 358, 365; Crowningshield's case, 10 Peck 497; Rex vs. Hunt, 3 B. and Ald. 566; 1 East, P. C. 97, sec. 38; Nichols vs. Dowding, 1 Stark R. 81; Gardner vs. State, 3 Scam. 87.

The court did not err in allowing the State to ask the question, whether the defendant had been previously seen with counterfeit money of the same kind, as set out in the indictment. Nor did the court err, in allowing testimony, to prove that defendant and Williams had passed counterfeit money of the same character, previously and subsequently to the passing of the bill set out in the indictment. This testimony was introduced, to show guilty knowledge, and for such purpose was competent: State vs. McAlister, 11 Shep. Maine R. 139; Thatcher's Crim. cases 293; ib. 47; State vs. Van Hereton, 2 Penn. Rep. 672; Hess vs. State, 5 Ohio 5; Com. vs. Martin, 2 Leigh. 745; State vs. Antoine, 2 Const. S. C. Rep. 776.

The testimony of witness, McAfee, showing that the defendant had been in the Kentucky State prison, was excluded by an instruction, given by the court, and the error cured if any had been committed in giving it.

The first and second instructions given by the court in relation to the question, whether the defendant was present, either actually or constructively, when his co-defendant passed the bill

set out in the indictment, are correct: Wharton Cr. L., p. 27; R. vs. Harley, 4 C. and P. 369; 4 Cranch 492; Archbold's Cr. Pls. 4.

The proposition contained in the 1st instruction, that if the defendant knew that the bill was counterfeit, and aided in passing it to Jacoby, intending it to be used by him as a genuine bill, the intent to defraud either Jacoby or the bank is bound to be inferred: Rex vs. Hill, 8 C. and P. 274; Reg. vs. Vaughn, 8 C. and P. 276; Reg. vs. Cooke, 8 C. and P. 582, 586; Reg. vs. Geach, 9 C. and P. 49; Wharton's Cr. Law 341; Archb. Cr. Pls. 106.

The intent to defraud the corporation or individual who would have taken the note, if genuine, or the person to whom it may be offered, is sufficient to make out the offence, so far as the fraudulent intent is concerned: United States vs. Shelmire, 1 Bald. 370; Wharton's Cr. L. 341; Rex vs. Mazagora, R. and R. 291; People vs. Coshing, 1 Johns. Rep. 320.

The substance of the first instruction asked for by defendant, is given in the last one given by the court.

The second instruction was rightfully refused. One may be an aider or abettor, without giving credit either to the person or paper offered. Suppose one to stand at a convenient distance, without the knowledge of the person upon whom the felony is committed, to give the alarm or to assist in escaping, this gives credit, neither to the person nor paper offered, and yet, this is aiding and abetting, and is a legal presence: Achb. Pls. p. 4; Wharton's Cr. L. 28.

The proposition contained in the third instruction, asked by defendant, is contained in the instructions given. The court is not bound to put every proposition directly as well as inversely.

The court did not err in refusing the 4th and 5th instructions, because, both of these instructions seem to proceed upon the idea, that it is "the incorporation which may be proven by reputation, when, in fact, it is the existence, constitution or power:" R. C. page 881, sec 21.

The court did not err in refusing to grant a new trial, because the jury were allowed to separate. It was by consent that the jury first separated, and it was understood that this consent was to continue during the trial. Defendant's counsel were present at every adjournment of the court, and did not object: Wharton's Cr. Law 644; 1 Chitty R. 401. The record must show that defendant objected to a separation of the jury before he can avail himself of it, if it be error. It must be shown by the record, that he did not consent to the separation, or the court will not reverse the judgment, even in a capital case: McKinney, 2 Gilman R. 554, 556.

The court did not err in refusing to allow Williams to be sworn as a witness in the cause; because, he was jointly indicted with the defendant Mix, and so was a party to the record, and, therefore, incompetent: People vs. Williams, 19 Wend. 377; State vs. Mills, 2 Dev. 420; Campbell vs. Com. 2 Ver. cases 314; Com. vs. Marsh, 10 Pick. 57; People vs. Bill, 10 Johns. 95; State vs. Carr, 1 Cox's N. J. Repts. 1; Chapman vs. Graves, 2 Campb. 333; Rex vs. Locker, 5 Esp. Rep. 107; Rex vs. Lafone, 5 Esp. R. 154; Rex vs. Rouland, 5 Ry and Mov. 401 (21 Eng. C. L. 471;) 1 Yerger 431; McMillan vs. State, 13 Mo. Rep. 84; 1 Phil. on Ev. 6 Am. Ed. from 9 Lond. page 67; Wharton's Cr. L. 210; State vs Calvin, 1 R. M. Charlton 151, 169; State vs. Smith, 2 Ind. 402.

RYLAND, J., delivered the opinion of the court.

The defendant, Mix, was indicted with one Dick Smith, alias John Williams, for passing counterfeit bank notes. The defendant severed on the trial.

There was proof tending to show very plainly, that the two indicted, Mix and Williams, were seen in company, at different places; and that Williams would purchase some article of small price, and give a bank note in pay, and receive cash and other notes in change; that these bank notes, so paid by Williams, were counterfeit. This was done at "Ja-

coby's," at "Dr. Bragg's store" and at the "Commercial Exchange," all in the city of St. Louis. That the defendant at one place, in order to make the change, took a plug of tobacco; that is, the person paying the change for the counterfeit note, which he had received in payment, paid over to Mix a plug of tobacco. There was evidence, tending to show, that Mix and Williams were together, so that concert of action might very fairly be presumed to exist between them.

The jury found the defendant guilty. He moved for a new trial, which being overruled, he brings the case here by appeal. The errors relied upon for a reversal, are, that the criminal court erred in giving instructions for the State, and in refusing instructions for the defendant; that it erred in allowing the jury to separate before finding their verdict; that it erred in admitting testimony to the jury, and, also, in excluding testimony, and that it erred in refusing to grant a new trial.

We shall not touch the point of the competency of the co-defendant to testify in this case, for the defendant on trial; this point is before us in the case of the State vs. Roberts, and will there be decided.

The point in relation to the separation of the jury, under the facts of this case, as they appear by the record, must be ruled against the defendant. Upon the trial, the court asked, "what shall be done with the jury?" and the counsel of both parties agreed that they might separate, under a charge from the court. This was at the adjournment at noon on the first day; and such separation continued afterwards, at each adjournment of the court, without any exception or objection, for several adjournments, until the attention of the court was called to it, after which, the jurors were kept together. The defendant's consent might have well been presumed. If he can plead guilty, I should think he might consent to the separation of the jury. Though, in some cases, it might be prudent for the court not to permit the consent to be given, in cases where minors or slaves are indicted, yet, the court might well refuse to act on the consent.

The following are the instructions given for the State:

1. If the jury believe from the evidence that the defendant, William Mix, was in company with Dick Smith, alias Williams, at the time he (Smith) passed the counterfeit money mentioned in the indictment, and that he knew the same to be counterfeit money mentioned in the indictment, and that he knew the same to be counterfeit, and if the jury believe that he was sufficiently near to render him assistance, or did aid or abet, or direct said Smith, alias Williams, to pass the same, and that he did so aid, direct and abet, knowing said bills to be counterfeit, the

intent to defraud Frederick Jacoby or the Mechanics & Merchants Bank of Wheeling may. be inferred.

2. It is not necessary that the jury should believe that the defendant was actually present when the felony was committed, but if the jury believe that the defendant was in company with Williams and that the said Williams did pass the counterfeit bill charged in the indictment, and that he knew the said bill was a counterfeit, and that the defendant, though absent at the time, had counselled, procured or abetted the said Williams in the passage of the same; then the said defendant is guilty of being accessory before the fact, and the jury will find him guilty of forgery in the second degree. The court is asked to exclude the part of the evidence of M'Affee, in which he says, defendant told him, that he, defendant, had been in the State Prison of Kentucky.

3. If the jury believe from the evidence in the cause, that the defendant did pass as true, or that he did in any way aid Williams in passing or in an attempt to pass, the bank note charged in the indictment, and that the defendant did so pass or aid or countenance the passing, knowing it to be counterfeit, and for the purpose of defrauding as charged, they will find him guilty of forgery in the second degree.

4. If the jury find the defendant guilty, as charged in the indictment, they will assess the punishment to imprisonment in the penitentiary for a term not less than seven nor more than ten years.

5. If the jury find the defendant guilty, but cannot agree as to the measurement of punishment they can return with such a verdict, without assessing the punishment.

In lieu of the instruction asked for by the defendant, relating to M'Affee's testimony, the court gave an instruction, in substance, as follows, to-wit:

6. If the jury believe from the evidence, that M'Affee, or any other witness, has wilfully and knowingly testified falsely to any material fact in the cause, they are at liberty to reject the whole or any part of the testimony of such witness, which is inconsistent with other truthful evidence in the cause.

The following instructions were asked by the defendant and refused by the court:

7. If the jury believe from the evidence, that the witness, M'Affee, wilfully testified falsely to any material fact in the case, they are authorized to discredit and reject the whole of his testimony.

8. The court is asked to instruct the jury that to aid, assist or abet another in the uttering or passing of a counterfeit bank note, is to do something which either gives credit to the person or the paper offered,

The State of Missouri vs. Mix.

that a man present when the paper is offered or passed, without saying a word or doing an act is not such aiding and abetting as will make a man subject to conviction.

9. In order to convict the defendant, the jury must be satisfied beyond a reasonable doubt, that the defendant passed, aided and countenanced and published as true, with intent to defraud the bank mentioned in the indictment, or the persons named, knowing that the same was counterfeit, one or more of the bank notes set out in the indictment.

10. The court is asked to instruct the jury, that to make the defendant an accessory before the fact, they must be satisfied that he did something which either gave aid to the person who passed it, or induced those who received it to receive it by some word or act; that his mere presence when the paper is offered or p assed without saying or doing anything, is not such a participation as constitutes an accessory before the fact.

11. In order to convict the defendant, the jury must be satisfied *from the evidence* that the bank set out in the indictment was a bank *incorporated* under the laws of the State of Virginia, and that the statute which dispenses with the proof that the same was incorporated by *reputation*.

12. If the jury believe that there is no evidence that the Bank of Virginia was an incorporated bank they must acquit the defendant.

Upon looking over these instructions, the first three, marked as given for the State, seem, at first inspection, to be somewhat loosely and incautiously written. We had much rather have seen the principles declared by them, plainly given to the jury. Yet, we will not say that these instructions are erroneous, or that they must have operated to the prejudice of the prisoner.

A few plain propositions, embracing the law upon the facts of the case, are greatly to be preferred, in every case, to a long string of instructions, running into each other, and involved in intricacies, requiring as much elucidation as the facts of the case themselves.

The 4th and 5th instructions, may pass without objection.

The 6th instruction is wrong. It was given instead of the first one asked by the defendant, and it does not fully embrace the point included in the defendant's first. We think the defendant's instruction should have been given, or some one embracing the same principles.

We do not find any point in the action of the court in refusing the other instructions, asked by the defendant. They were calculated to mislead the jury. An accomplice might stand by, watching and guarding his fellow, while engaged in the act of passing the counterfeit money,

without even doing an act, or saying a word, at the time.  Nay, he might be keeping the watchman's post, at a distance from the scene of operations, and, at the same time, be guilty.  This is a crime, after the preparations are made and the funds ready to be used, which may be perpetrated by the assistance of those who, seemingly, at the time, act as strangers to each other.  The aid, the abetting, may be given in the dark closet or cellar, or at the different angles of the cross streets.  The cunning, crafty devices which they use to impose upon the unsuspecting, are, in the language of one of the witnesses, in alluding to a new issue of counterfeits, "something hard to beat."

The instruction in regard to the incorporation of the bank of Virginia, were properly refused.  The testimony of the witness, that the defendant told him he had been in the state prison of Kentucky, under the circumstances on which it was brought out, on the trial below, was improper.  It should not have been allowed.  The court, afterwards, did all it could to cure the impropriety, by withdrawing it from the jury, but it was wrong to allow it at first; the injury it caused to the defendant, may have been too deeply fixed on the juror's minds to be easily obliterated.

It was competent to the State to prove, after having proved that the defendant had passed a bank note, which was counterfeit, as charged in the indictment, in order to show guilty knowledge in the defendant, that he had passed other counterfeit bank notes, of a similar kind to other persons, at different times, before and subsequent to the indictment.  See the authorities to the point cited in the circuit attorney's brief.

We think the court erred in giving the 6th instruction, in lieu of the defendant's first.

If the law be fairly laid down, in the instructions given to the jury, embracing the whole case, we will not reverse for not giving others, which in themselves may be right.

The judgment in this case is reversed, and the cause remanded; the other judges concurring.