# THE LYCOMING FIRE INSURANCE COMPANY

*v.*

# JOHN O. RUBIN.

1. INSURANCE—*false representations by assured, as to value.* The contract of insurance is one in which the parties must act with the utmost good faith; no false representations, which go to affect the risk, must be made; the assured must tell the whole truth, and not conceal any important fact, and he must not make any false representation as to the amount or value of the stock insured.

2. Where a party, by false representations as to the amount and value of his stock of goods, obtains a policy of insurance upon a valuation at twice the value of the goods, this, of itself, renders the policy absolutely void.

3. ERROR *in permitting improper evidence to go to the jury, not cured by instruction to disregard it.* Where improper evidence is permitted to go to the jury, against objection, the mischief can not be remedied by afterwards instructing the jury to disregard it. It is not easy to remove from the minds of the jury, by instructions, impressions produced by improper testimony. The inevitable tendency of such evidence, in doubtful cases, is to mislead.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. LAWRENCE PROUDFOOT, for the appellant.

Mr. O. B. SANSUM, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was assumpsit, in the circuit court of Cook county, by John O. Rubin, plaintiff, against The Lycoming Fire Insurance Company, defendants, on a policy of insurance, executed by the defendants, to the plaintiff, August 29, 1872, insuring plaintiff for one year, in the sum of two thousand dollars, on his stock of jewelry, watches, clocks, and materials for the same, silver plate and plated ware, contained in a two story framed building, in the town of Evanston.

The general issue was pleaded, and submitted to a jury, who found for the plaintiff, assessing his damages at two thousand one hundred and eighty-one dollars, for which the court rendered judgment, having denied defendants' motion for a new trial.

The case is presented to us on the evidence and instructions, and we have given the record a careful and laborious examination.

The theory of the defense was, fraud in procuring the insurance in the amount stated in the policy, the assured, at the time of its execution, not having articles of that value in the building.   Appellants contend. that appellee, at the time of taking out the policy, wilfully and fraudulently over-valued his stock, and deceived appellants, whereby they were induced to take the risk ; and further. that appellee did not have the goods at the time of the fire which he claims were lost, and for which the verdict allows him.

The contract of insurance is one in which the parties to it must act in the utmost good faith.   No false representations must be made, which go to affect the risk.   The insured must tell the whole truth—there must be no concealment of any important fact, or false representations as to amount of stock or value.   The insurer trusts to the representations of the insured, and proceeds upon the confidence that he has been given all the *data* necessary to enable him properly to estimate the risk.

From the best examination we have been able to give to the testimony in this cause, it is very evident appellee had not, at the date of the policy, the amount of stock and of the value represented.   It is said, however, in explanation, that his stock was examined and valued by an agent of the company, and on his report the risk was taken.

This supposed agent is a Mr. Ludlum, who was not at that time, nor at any other time, the appointed agent of this company.   He was a man in the habit of picking up, as a broker on the street, any risk of which he might get information.   It

was on his application to appellee, to permit him to place some insurance for appellee, that the policy was written. He never made any examination of the stock at any time; he merely looked into the "show case," where he saw some watches. some chains, and some plated forks; saw no invoices, but took the value from representations and figures made by appellee, which appellee had ready to show him on the second visit he made to him. After this showing. Ludlum took the application to the agent of the company, and obtained the policy in question. In this, he was the agent of appellee and not of appellants. The fact that the agent allowed him a commission does not change the character in which he acted.

The representations made by appellee to Ludlum, and which he communicated to the company's agent, Mr. Hoag, were, that the stock on hand was of the value of thirty-three hundred dollars, or thereabouts.

That this was a false representation, appellee's own testimony, taken in connection with that of Oppenheimer, Tonnygren, Zopoldt and Laquecrantz, establishes. From this testimony, appellee could not have brought to Evanston, from Amboy and Kewanee, an amount of stock to exceed in value six hundred dollars. to which was added, by purchases from Happel & Co., from March 27, 1872, to the day of the date of the policy, goods to the amount of ten hundred and ninety-eight dollars and ninety-two cents, of which some fifty-three dollars were for tools and materials, and not claimed to have been covered by the policy. Subsequent to the date of the policy, August 29, up to October 5, he purchased of the same firm stock to the amount of three hundred and eight dollars and twenty-eight cents; which two purchases aggregate fourteen hundred and seventy-nine dollars and twenty cents, from which deduct, for tools and materials, fifty-three dollars and eighteen cents, leaves fourteen hundred and twenty-six dollars and two cents. Adding this to the stock brought from Amboy and Kewanee, six hundred dollars, .there would have been, apparently, a

stock, at the date of the policy, of two thousand and twenty-six dollars.

Appellee came to Evanston from Amboy, *via* Kewanee and Chicago, about the 1st day of April, 1872. The policy was executed August 29, and the fire occurred October 15, of the same year.

By his own testimony, his business, after opening at Evanston, up to the date of the policy, a period of five months, was fair, his sales amounting to as much as one hundred dollars a month. Deducting, then, five hundred dollars from the aggregate of two thousand and twenty-six dollars, his stock could, by no possibility, have exceeded in value fifteen hundred and twenty-six dollars. On this value he obtained, by false representations, an insurance on a valuation of three thousand dollars. This, of itself, vitiates the policy, and renders it void absolutely.

Now as to proof of loss. It is impossible to read the testimony on this branch of the case, without a conviction that the goods for which appellee claimed as for a total loss were not in the building at the time of the fire, or that the laws of matter have undergone a radical change.

Appellee testified the fire happened about three o'clock in the morning. McKay, who slept in an adjoining apartment, says about one o'clock. Appellee further testified, the tea-set was in the window the night of the fire; also the cake baskets, napkin rings, and butter knives—"all my plated ware was in the window."

According to Happel & Co's invoice, there was, of plated ware—and he had no other—besides the above, as specified, cups, ice pitchers, castors, three dozen plated forks, three dozen table spoons, six dozen tea spoons, one plated child's set (in case), four dozen sugar shells. All these articles were in the window for display, placed there to attract attention, and which, from their variety, they could not fail to do; yet Mr. Huntoon, a magistrate of the town, living near these premises, going to the fire, having been aroused by the cry,

testifies positively, when he got to the building the fire had not reached this window, and when he saw it there was none of this ware, none of these articles, in the window. This testimony is not contradicted. It is impossible they should not have been there, if there at the time the fire broke out.

Upon the other proposition, it will be observed that many of the articles claimed to have been destroyed were of solid silver and solid gold. The most careful and scrutinizing examination of the *debris*, immediately after the fire, failed to discover a single particle of gold or silver. Was it true articles of that nature were in the building when fired. some trace of them would certainly have been found, for the keenest search was made for that purpose. The remains of nothing of any value were found. Huntoon the elder spent the most of the day after the fire raking the embers, trying to find valuables. There were two or three others aiding. Esq. Huntoon raked where the show case had stood, and where appellee's work bench had been, and under the window in which the plated ware was sworn by appellee to have been. He procured a tea caddy, about eight inches square, in which he put all that he found—they were some forks and spoons, spectacle bows. and the dial plate and inside plate of one watch ; these plates were found where the bench had stood, and appellee told him, afterwards, belonged to a watch he was repairing. These were the only parts of the many watches appellee included in his claim of loss.

Huntoon further testified. the spoons found were plated ware, the plating burned off. They found watch springs and clock springs under the shelf where the clocks once stood ; found clock bells and clock hands ; they found the fastening of the show case and the hinges, and a metal spectacle case ; was there all the day and the next, industriously searching ; found no silver forks or spoons; found no gold rings, and not a grain of gold or silver of any kind. Appellee put no one there to rake the ruins, and Huntoon had great difficulty to get him there to indicate the place where his property had

been placed.   Witness went after him and brought him there. He was not there during the fire, and only twice there the next morning.

In all these statements, except the last, this witness is corroborated by others ; and as to the last, it is not contradicted, nor was any one interrogated on the point.

It may be, as stated by Mr. Happel, that gold, mixed with soft solder, will fuse into a black oxyd when superheated, but not so with solid gold nor with solid silver.   Solid gold can only be melted at a white heat, and will still be gold—it is indestructible by any known heat.   So with solid silver. This witness states. that gold jewelry is seldom composed of soft solder.   If it does not come in contact with soft solder, the article will be found as bullion.   So with solid silverware : the residuum, after a fire, will be found in the same condition—"it would melt into a lump."   Watch movements, the destruction of which was claimed, the witness says would not become obliterated by fire.

We understand it to be a fact, that the precious metals, gold and silver, no matter into what form they may be worked, if melted by a conflagration, such as this, will reappear as bullion.   This fact condemns this claim, as not a trace of either metal was found in the *debris* of this fire—not a watch movement, nothing to indicate such articles were there to be consumed.

The truth of this case is, that appellee had not, at the time he effected the insurance, the property of the kind and value stated, or if he had, these valuables were removed before the fire, which he could have removed as easily as he removed near five hundred dollars worth of watches ; and the conclusion is not unreasonable that he caused the fire intentionally, after moving the valuable goods.

On this point the evidence is, he left a lamp burning on the show case made of glass, with a metal border, sitting upon a wooden counter.   When he awoke and discovered the fire, there was nothing burning but a small space about the coun-

ter, which could have been quenched, if desired, with a bucket of water. This he did not attempt to apply, but immediately left the building; was not seen at the fire; made no effort to save anything. and could be got to the scene only by the strong persuasion of Mr. Huntoon.

It is not improbable that he had packed off all the valuables to a secure place, and then fired the building. And this is not uncommon with those who have been dishonest enough to over-insure their property. It is of frequent occurrence, and courts and juries are bound to expose them, and defeat the wicked intention.

An error in the ruling of the court is complained of, and that is in permitting appellee's proof of loss to go to the jury. That this was error is not denied, but it is insisted it was cured by the instruction of the court to the jury to disregard it.

That this did not cure the error, is settled by *Lafayette, Bloomington and Mississippi Railroad Co.* v. *Winslow et al.* 66 Ill. 219.

This point was distinctly presented in that case, and it was said it was of the utmost importance, in trials by jury, that the testimony given to them should be free from all exception ; that it was not easy to remove from the minds of jurors, by instructions, impressions produced by improper testimony which the court has admitted against objections. The inevitable tendency of such evidence is, in doubtful cases, to mislead, and the extent of the mischief produced by it can not well be calculated.

That this proof had great effect upon this jury is evident from the amount of the verdict, they finding for a total loss, and against all the well proved facts and presumptions in the case.

There does not appear to us to be a shadow of justice in this claim of appellee. The verdict was wrong, and should have been set aside on motion.

It is unnecessary to remark upon the tenth instruction asked by appellants and refused. The case is with them, on the merits.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*