FRANCIS H. COBB, Appellant, v. GRIFFITH & ADAMS SAND, GRAVEL, AND TRANSPORTATION COMPANY, Respondent.

April 25, 1882.

1. The statute of Illinois, which provides that no person except the one who has title at the time of the sale, shall be permitted to question a tax-title, confers on the owner thereof a property right, which operates in his favor in an action brought in this state for the value of sand taken from the land.

2. A judgment will be reversed for the admission of incompetent testimony, where it is probable that an instruction to disregard it failed to remove the impression made by it.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

CHARLES W. THOMAS and ROBERT A. HALBERT, for the appellant.

M. L. GRAY and HOLMES & TALBOT, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff claims compensation for one hundred thousand cubic yards of sand taken by the defendant from beneath

the waters of the Mississippi River, on land of which the plaintiff alleges he is the owner, near the Illinois shore. The defendant denies generally, and pleads a license from the true owner, and the statutory limitation of five years. The verdict and judgment were for the defendant.

The controversy has been directed chiefly on both sides, to the merits of a tax-title held by the plaintiff, and to the defendant's right to attack the same in this proceeding. The laws of Illinois were introduced in evidence, and the plaintiff exhibited a tax-deed to his grantor, which appeared to conform therewith.   The Illinois statute provides, that " no person shall be permitted to question the title acquired by a collector's deed, without first showing that he or she, or the person under whom he or she claims title, had title to the land at the time of the sale, or that the title was obtained from the United States or this state, after the sale, and that all taxes upon the land have been paid by such person, or by their agent, or the person under whom he claims title as aforesaid."   Gross' Stats. Ill. 575, sect. 15. It appears from the bill of exceptions that the defendant introduced evidence tending to show that all the taxes had been paid on the land in question for the year in which delinquency was assumed by the collector's deed.   No objection was made to the testimony at this point.   Afterwards, the defendant offered a number of depositions to prove the same facts.   The plaintiff objected, on the ground that the defendant was not, under the statute above quoted, in a position to attack the tax-deed — no title being shown in the defendant, or any one under whom it claimed.   The statements are here somewhat confused, as to the order of occurrences, but the facts seem to be that the court, considering the testimony to be already admitted without objection, overruled a motion to exclude it, because the point might be better preserved in an instruction.   What, or how much, was comprehended in the testimony first offered on this point and not objected to, does not appear.   But,

upon the ruling just mentioned, the defendant read at length seven depositions of witnesses who appeared to be the real owners of the property in question, and who had paid the taxes for which the land was erroneously sold. The court afterwards instructed the jury, that the defendant could not question the plaintiffs' tax-titles, without having first established that the defendant, or the person under whom it claimed, had title to the land at the time of the sale for taxes, or had since acquired it from the United States or the state of Illinois. Two questions here arise: 1. Was it error to admit the testimony? 2. If erroneous, was the error cured by the instruction?

For the defendant, it is contended that the Illinois statute prescribes a rule of practice only, and not a rule of property or title, and therefore it can have no force in Missouri, where there is no such law. Where, in one country, there is a personal disability to sue, as of slavery, non-age, coverture, etc., such disability will not follow the person into another jurisdiction wherein it is not recognized by law. So of the statute of limitations and other regulations which apply exclusively to the remedy. But, in this instance, the rule is not one of personal disability merely. It creates no exclusion from the courts in a general sense, but demands that the claim to be asserted shall be reinforced by a certain other interest or title in the property. It says, in effect, that the title of the purchaser at a tax-sale, even though the taxes have been paid, and the sale is therefore unauthorized, shall be good against all the world, excepting only the person who has title at the time of the sale, or who afterwards acquires it from the national or state government. Such, in other words, is the nature of the title conveyed by the collector's deed. The rule is, therefore, one of property right, and not one of personal disability. It must follow him who holds the right, wherever he may go. For the same reasons, the rule is not of exclusive application to the remedy. Inasmuch, then, as the defendant

was not within the statutory limitation, its attack upon the plaintiff's tax-title, by proof that the taxes had been paid, was unauthorized, and the testimony should have been excluded.

The defendant introduced in evidence the decision of the supreme court of Illinois in *Cobb* v. *Lavalle* (89 Ill. 331), by which it was determined that the land from which the sand was taken, being an accretion to certain leasehold lots held by other parties, was the rightful property of such leaseholders. From this it follows that the assessment to the plaintiff, as owner, and the subsequent tax-sale, were invalid, and the plaintiff never had any title at all. This testimony was alike open to the objections against the testimony about the payment of the taxes ; but it was not objected to by the plaintiff when it was offered.

In criminal cases, our supreme court has repeatedly ruled that the admission of improper testimony against the defendant cannot be cured by an instruction for its exclusion. *The State* v. *Mix*, 15 Mo. 153 ; *The State* v. *Wolff*, 15 Mo. 168 ; *The State* v. *Schneider*, 35 Mo. 536 ; *The State* v. *Marshall*, 36 Mo. 400 ; *The State* v. *Daubert*, 42 Mo. 242. We are unable to find that the question has ever been passed upon by the same tribunal in a civil case. It must often occur that the incompetent testimony admitted is of so little intrinsic influence as to be capable of making no impression upon a jury, that may not be easily removed by an instruction withdrawing it from their consideration. But, on the other hand, there are many cases in which the juror's prejudices, or his untutored views of abstract justice, although at variance with the law of the case, may be so influenced by the testimony improperly admitted, as to control his verdict, in the face of the instruction. When such a probability strongly appears, there seems to be no good reason why the civil litigant should not be entitled to the same benefit of appellate revision that is accorded to the defendant in a criminal case. In *Railroad Company* v.

*Winslow* ( 66 Ill. 219 ), some testimony had been improperly admitted, whose tendency was to establish a claim for vindictive damages. The court said : " It is true, the court, in a proper instruction to the jury, directed them to disregard all testimony of that character, but the wrong was done, and it is not always easy to remove from the minds of a jury impressions produced by testimony which the court had admitted against objections. It is of the utmost importance, in trials by jury, that the testimony given to them should be free from all exception. * * * The inevitable tendency of such evidence is to mislead, and the extent of the mischief produced by it cannot well be calculated." The judgment was reversed. The same views were adopted in *Lycoming Insurance Company* v. *Rubin* ( 79 Ill. 402 ), and in *Howe Machine Company* v. *Rosine* ( 87 Ill. 105 ). In the latter case the court said : " In some cases, where irrelevant evidence has been admitted, and the jury afterwards properly instructed, it may be that the judgment need not be reversed on that account. This cannot be done unless the case is such that it clearly appears that no injustice or wrong has been done to the party complaining of the error."

We think the present case, in the light of these decisions, presents very strong grounds for a reversal. The plaintiff's position in court seemed to be that of a party who had obtained a tax-title by unfair means, dating from the original assessment, and who was using it oppressively to enforce a claim which rightfully belonged to other persons. A supreme court decision was read to the jury, which declared, in effect, that the land from which the sand was taken was the property of leaseholders under the town of Cahokia, against whom the plaintiff's tax-title would be worthless. When this evidence, which was wholly irrelevant, as before shown, was supplemented by the testimony of seven deponents, also irrelevant, showing that the leaseholders had, in fact, paid the taxes, so that there was no delinquency to sustain the plaintiff's purchase for unpaid taxes, a very

strong impression must have been made upon the minds of the jury, against any right of recovery in the plaintiff. It is not only doubtful, but extremely improbable, under such circumstances, that any instruction could destroy all traces of that impression. It certainly does not appear that "no injustice or wrong has been done to the party complaining of the error." Our conclusion is that, while it cannot be said that the admission of improper testimony against objections will always justify a reversal, even though there be counteracting instructions, yet, in the peculiar aspects of this case, it would be unjust to permit the verdict to stand.

There was testimony of a lease of the land from which the sand was taken, by the town of Cahokia to one Illinski, in 1872, and a license from this lessee to the defendant. From this it is argued that the defendant, claiming under the town of Cahokia, the original owner, had a right to question the tax-deed. But this will not hold, for the reason that the town had long before leased the shore-lots to other parties, and these leases carried with them the accretions, so that the town was not an owner, at the time of its lease to Illinski, and therefore its lessee and its licensee were both excluded by the terms of the Illinois statute.

For error in the admission of incompetent and irrelevant testimony, the judgment must be reversed and the cause remanded. All the judges concur.