Meyer v Lewis.

GEORGE MEYER, Respondent, v. RICHARD A. LEWIS, Appellant.

**St. Louis Court of Appeals, January 27, 1891.**

1. **Negligence :** COLLISION ON HIGHWAY : SUFFICIENCY OF THE EVI-DENCE.  The evidence of negligence on the part of the defendant considered, and *held* sufficient to take the case to the jury.

2. **Practice,Trial :** ADMISSION OF INCOMPETENT EVIDENCE : EFFECT OF INSTRUCTION WITHDRAWING IT.   While the general rule applicable to civil trials is, that incompetent evidence admitted at the trial may be withdrawn by the party offering it, or stricken out on his motion, or withdrawn by an instruction admonishing the jury to disregard it, so as to cure the error of the admission of it, cases may arise, in which it will be apparent to an appellate court that this error was probably not cured by such withdrawal, and which will, therefore, warrant the reversal of the judgment.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*J. P. Vastine,* for appellant.

*John A. Talty,* for respondent.

THOMPSON, J.—This was an action for damages grounded upon negligence.   The plaintiff had a verdict and judgment, and the defendant takes the case here by appeal.   The errors which are assigned are, so far as they need be noticed, the following :  *First.* That there was no evidence to take the case to the jury ; *second,* that the court erred in admitting an item of evidence as to the statement made by the driver of the defendant, against the defendant's objection.

As to the first assignment of error it is to be observed that the injury, according to the evidence, happened in this way :  The defendant was the owner

of certain hackney coaches in the city of St. Louis. One of these coaches was on the street in charge of a driver named Elstner, who was driving it along one of the streets of St. Louis at about one o'clock during a dark night. The plaintiff and a man with whom he had been drinking in a saloon came out of the saloon, and the plaintiff was about to get upon a street car for the purpose of going home, when suddenly he was struck and run over by the defendant's horses and hack so in the charge of Elstner. The plaintiff's version of the affair is that the light emitted by a street lamp, and through the glass doors of the saloon in which he had been drinking, was such that he stood in the light where he could be seen; whereas the defendant's hack approached him out of the dark where it could not be seen. These statements are sufficient to show that there is no ground for the assignment of error that the court erred in submitting the case to the jury. In cases of this kind—collisions upon the highway, where both parties have a right to be—there is generally a fair question for a jury, both on the question of the negligence of the defendant and the contributory negligence of the plaintiff. Such was the case here; and the court seems to have submitted the case to the jury upon sufficient and proper instructions.

But we are of the opinion that the second assignment of error is well taken, and that it must lead to a reversal of the judgment. This question is exhibited by the bill of exceptions in this way : The plaintiff, being on the witness stand testifying in his own behalf, the following colloquy took place :

"By Mr. Talty : Now, I want to ask what this driver said. I have shown Mr. Lewis stated it was his driver. I want to show what the driver testified in court, on the stand, as to what occurred on that night when he was injured.

"Mr. Vastine : I would like to prove first that the driver testified in the case.

" The court: He may now testify, if he remembers, what the driver stated at that trial in the presence and hearing of Mr. Lewis.

" Defendant's counsel objects to the question as irrelevant and incompetent; objection overruled; defendant at the time duly excepts.

" By Mr. Talty: *Q.* What did this driver, whose name is Elstner, say in the hearing of the defendant,— anything as to how the accident occurred, as to how you were hurt? *A.* The judges asked him if he had stopped at the crossing, or that if he knowed that he had to stop; he said no, he did not know he was on the crossing, or if he knowed he was on the crossing,—something like that. And so the judge said, ' If you don't know to stop at the crossing when passengers are on it, trying to get in the cars, the judge said —

" *Q.* Don't say what he said ; I don't care anything about that. Did the driver say anything about how he came to run over you?" *A.* No, he did not know it.

" *Q.* State what he said. *A.* He said he didn't know, it seemed like he was asleep on the hack, or didn't know anything about the whole thing, he did not see nobody, and didn't see his own horses.

" *Q.* Did he say that? *A.* That is what he said, he did not see nobody."

The court gave, among a large number of instructions relating to the law of the case, the following cautionary instruction to the jury : " The jury are instructed to disregard all testimony concerning the statement alleged to have been made by Joseph Elstner in the police court." That the testimony of the plaintiff concerning the statement thus made by Elstner, the defendant's driver, was inadmissible and prejudicial, is not controverted. He is understood to have been testifying for himself in a *quasi*-criminal prosecution, instituted against him by the city for his criminal negligence in running over the plaintiff. He was endeavoring to exonerate himself merely, and the mere fact that the

defendant may have been present in court did not affect the defendant or bind him by the statements made by Elstner, on any principle known to the law. Moreover this evidence belongs to a species of evidence —evidence of the declarations or admissions of parties or of other persons—which is always attended with danger. It is always subject to the infirmity of being garbled or misrepresented by the witness, through whose mouth it is detailed. The danger is greater in such a case as the present, where it is detailed through the mouth of an interested party.

The question for decision then is, whether the admission of the testimony is to be regarded as error, for which the judgment ought to be reversed, notwithstanding that the court attempted to cure the prejudice by directing the jury to disregard it. In this state the rule *in criminal cases* is, that the admission of improper testimony cannot be cured by an instruction to the jury to disregard it. *State v. Mix*, 15 Mo. 153; *State v. Wolff*, 15 Mo. 168; *State v. Schneider*, 35 Mo. 533; *State v. Marshall*, 36 Mo. 400; *State v. Daubert*, 42 Mo. 242; *State v. Thomas*, 99 Mo. 235. This rule has been established out of the extreme solicitude of the law that persons accused of crime shall be fairly tried. The rule does not hold to the same extent in civil cases. In other jurisdictions the prevailing view seems to be that the prejudice, produced by admitting illegal evidence, may be cured by instructing the jury to disregard such evidence. See cases cited in 1 Thompson on Trials, sections 351, 723. But decisions of several respectable courts are found to the effect, that even in a civil case the admission of illegal evidence, which is plainly prejudicial, may be ground for a new trial, where the reviewing court is of opinion that its prejudicial tendency was probably not cured by a direction to the jury to disregard it. *Railroad v. Winslow*, 66 Ill. 219; *Lycoming Ins. Co. v. Rubin*, 79 Ill. 402; *Howe Machine Co. v. Rosine*, 87 Ill. 105. It is plain

that it cannot be admitted, even in a civil case, that illegal testimony can always be cured by an instruction directing the jury to disregard it. If such were the rule, it would open the door to gross fraud upon the administration of justice. A cunning lawyer might frequently get such testimony before the jury, and afterwards withdraw it by offering to have it stricken out, or by procuring the judge to instruct the jury to disregard it.

This is well illustrated by a modern holding in the New York court of appeals. After repeated objections to illegal questions had been made and overruled, and the answers of the witness had been given, the party tendering the evidence proposed to have it stricken out. The opposing party declined to accept this proposition, and elected to retain and to stand upon his exception. The trial court made no ruling, and gave no instruction to jury on the subject. The former ruling, the exception thereto, and the objectionable testimony, all remained in the case. It was said by the reviewing court: "The defendant's counsel had the legal right, after the evidence had been admitted in spite of his repeated objections, to insist upon his exception ; and it was not his duty to waive it, as he would have done by accepting the proposal of the plaintiff's counsel. So far as the jury might be influenced by the incompetent evidence, the mischief was already done, and would not have been repaired by the agreement of counsel to strike it out. The answer of the witness was strictly responsive to the question objected to, and the plaintiff's counsel had no right to have it stricken out. * * * . The offer of the plaintiff's counsel, if accepted, would not have caused the jury to overlook this evidence, when they came to consider the case, and it is impossible to say that it did not have some influence upon them." *Furst v. Railroad*, 72 N. Y. 542. The court thus held that the error of admitting incompetent evidence would not be cured *by the offer* of the counsel tendering it to have it stricken out.

The question whether illegal testimony, admitted against the objection of a party in a civil case, can be cured by an instruction directing the jury to disregard it, was carefully considered by this court in the case of *Cobb v. Griffith, etc., Co.*, 12 Mo. App. 130; and it was, in the view which this court took, the only question in the case. Our conclusion was that a judgment ought to be reversed for the admission of illegal testimony, where it is apparent, from the whole record, that an instruction to the jury to disregard it did not probably have the effect of removing from their minds the prejudicial impression produced by its being rehearsed to them. The value of this case as a judicial authority is possibly weakened by the fact that the *judgment* of this court was reversed by the supreme' court, although on a point which did not touch the question under discussion. *Cobb v. Griffith, etc., Co.*, 87 Mo. 90. The supreme court held that the item of evidence in question was admissible for one of the purposes of the action, and, consequently, being admissible for one purpose, it could not be kept out, but that it was proper to limit its evidentiary effect by an instruction to the jury. What the two courts held was, therefore, based upon different views of the admissibility of the instrument of evidence, and the decisions are not in conflict on the point under consideration.

Quite in line with the view which this court took in that case is the more recent decision of our supreme court in the case of *Stephens v. Railroad*, 96 Mo. 207, 214. That was an action for damages, by an employe of a railway company, for a personal injury, and he had recovered a verdict and judgment in the sum of $8,000. Towards the close of the evidence plaintiff was asked by his attorney whether he was a married man, and, if so, how many children he had. The defendant objected. The court overruled the objection, but, at the same time, stated that the jury must not consider the question or answer in making up their verdict, and especially that

it should not be considered in fixing the amount of the verdict, should they find for the plaintiff. The plaintiff then answered that he was married and had four children. The court, after observing upon the incompetency of the evidence, and upon the large amount of damages which the jury had awarded, said: "We have no doubt but that the trial court may exclude improper evidence during the progress of the trial, or by an instruction at the close of the evidence ; and, when this is done, the . fact that such evidence was heard by the jury will not operate as a reversal of the judgment. Here it is difficult to understand what effect the evidence had, for the jurors are told not to consider it ; yet at the same instant the objection is overruled and the evidence admitted. * * * " And the court concluded that the admission of the evidence was prejudicial error, notwithstanding the jury had been instructed not to consider it, and especially not to consider it in their award of damages. There can be hardly any distinction in principle between the case where the jury are admonished not to consider evidence at the time when it is offered, and where they are so admonished by an instruction at the close of the whole case.

We conclude, therefore, that the *general rule* applicable to civil trials is, that incompetent evidence admitted in the progress of the trial may be withdrawn by the party offering it, or stricken out on his motion, or withdrawn by an instruction admonishing the jury to disregard it so as to cure the error of admitting it. But we are equally of opinion that cases may arise where it will be apparent to a reviewing court, from the nature of the evidence thus admitted, from the other evidence in the case as preserved in the bill of exceptions, and from the verdict rendered by the jury, that the error of admitting it was probably not cured by the withdrawing of it, or the striking of it out, whether by the party offering it, or by the judge in directing the

jury to disregard it. Such, in our judgment, is the case before us. The question whether the proximate cause of the injury was the negligence of the defendant's driver or the negligence of the plaintiff himself, was a very close one upon the evidence, to say the least. The popular impression seems to be that the actor who commits the injury, or does the damage, ought to be held as an insurer for his conduct. In view of this manifest tendency of jurors, it is important, in cases of this kind, that prejudicial evidence should be kept out of their minds,—that nothing should be rehearsed before them which can increase this evident tendency or afford a pretext to them to disregard the instructions of the court.

The judgment will, accordingly, be reversed and the cause remanded. All the judges concur.