## Spiros Kavooras, Appellee, v. The Insurance Company of Illinois, Appellant.

## Gen. No. 16,103.

INSURANCE—*when false swearing vitiates policy.* Fraud committed by the insured and false swearing by him in making proofs of loss and in testifying in the action to recover for alleged loss, will vitiate and render absolutely void the policy sued upon if such policy provides that such effect shall result from such conduct.

Assumpsit. Appeal from the Superior Court of Cook county; the HON. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with a finding of fact. Opinion filed February 6, 1912.

MUSGRAVE & LEE, for appellant.

SYMMES & KIRKLAND, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

In this case there is brought up for review a judgment for $772.34, entered in favor of the appellee and against the appellant, on an insurance policy. The case was tried before the court and a jury and there was a verdict for $1260.71, being the full amount of plaintiff's claim. Motion for a new trial was made, which was denied by the court upon the appellee's entering a *remittitur* of $488.75. The case was argued in this court in connection with case No. 16104, entitled Spiros Kavooras v. The Royal Insurance Company of Liverpool, (*Post,* p. 230). The case last mentioned was upon two insurance policies, both of which covered the stock of goods and fixtures of appellee, as did those in the suit now under consideration. One of the policies also contained a clause of $250 upon a glass porch to the store building.

Suit No. 16104 was submitted to the court without a jury on a stipulation upon the evidence adduced at the hearing before the court and jury in the present case. For convenience, therefore, the facts, so far as it may be necessary to set them out, will be recited in this opinion as controlling in the two cases.

The appellee conducted a grocery and meat market in 113th street, Pullman, Illinois, the premises consisting of a two story brick building, the front part of the lower floor of which was used for the grocery and market. It was divided into two rooms of the same size, being about 15x36 feet, the two rooms being separated by a hall 8 feet in width. Behind the grocery store, but in no way connected with it, were bedrooms which had been occupied prior to the time of the second fire by clerks, and behind the meat market there was another room. Appellee procured three policies of insurance, the first being a policy in the Royal Insurance Company of Liverpool for $2,700, divided $1,900 on merchandise, $550 on furniture and fixtures, and $250 on a glass porch on the front of the premises. This policy was issued in October, 1903, for one year, and extended thereafter for an additional year to October, 1905. The second policy was procured in June, 1904, and was issued by the appellant company. Its period was for one year, and it was divided $900 on merchandise and $400 on furniture and fixtures. On August 1, 1904, a third policy was obtained from the Royal Insurance Company for $2,000, divided $1,500 on merchandise and $500 on furniture and fixtures.

There is some testimony to the effect that when each policy was issued the representative of the insurance company supposed it was the only one issued on the property. Verhaar, the agent of the appellant, testified that when the policy of the company he represented was issued Kavooras told him there was no other insurance on the property; that he refused to issue a policy for $2,500 on the merchandise and fix-

tures as Kavooras desired, but finally consented to issue the one for $1,300 which is the one in issue in this case.

On Thursday night, January 26, 1905, the first fire occurred on the premises. There was a place burned in the floor of the hall about two feet by three or four feet. Appellee testified that ''there was no other part of the store where the wood was burned except in the floor and in the partition a little by the door.'' The following Monday afternoon, January 30th, a representative of the Royal Insurance Company went to the appellee's store with Mr. Pon, a local agent, to examine the premises, and requested appellee to make an inventory of all the merchandise on the premises. It appears that Kavooras then set about making such an inventory by calling off the items to an employe, Miss Mamie Chadwick, who wrote them down together with the values as indicated by Kavooras. Kavooras insisted at the trial that this list included only the property damaged by smoke at the time of the first fire, but Miss Chadwick testified that it was substantially a complete inventory of the merchandise in the store. The total value of the property in this inventory is shown to be about $700, while Kavooras in his testimony placed the value of the merchandise in the store at the time of the second fire, two and one half days later, at $4,300. The second fire resulted in the complete destruction of the property. This fire occurred on the night of February 2nd-3rd. Between the dates of the two fires, and while the inventory was being completed, two representatives of the insurance companies called on Kavooras with reference to an adjustment of the loss caused by smoke at the first fire, and agreed to the payment of $150—$130 on the merchandise and $20 on fixtures. This amount was not paid, apparently because of the occurrence of the second fire so soon thereafter. The statement prepared by Miss Chadwick and the appellee apparently

placed the value of the fixtures at $750 and the damage to them at $20. No detailed statement was made of the fixtures, and at the trial of the case the insurance companies made no proof as to their value, so that the value placed upon them by the appellee governed. The fixtures were shown to be largely "second-hand."

The inventory referred to was checked by Mather and Newmark, the adjusters of the insurance companies, and the substance of their testimony is to the effect that it correctly sets forth in detail substantially all the merchandise in the store two days before the occurrence of the second fire. Kavooras, on the other hand, testifies that it includes only a list of property damaged. Miss Chadwick in a criminal suit against Kavooras for arson (her testimony being read into the record in this case), testified that a week before the criminal case was heard Kavooras came to her home and told her when she testified she should testify that "it was just the loss." "He said when you tell them why you say that the stock you took was the damaged stock." She further testified "I know of my own knowledge as to whether this was damaged goods or whether it was the entire stock. It was the entire stock." It ought to be said that in the criminal proceeding Kavooras was acquitted. The jury in the case we are now considering found specially that the plaintiff did not wilfully and intentionally make a false statement to the defendant in the proofs of loss, either as to the merchandise or the furniture and fixtures. In his testimony Kavooras undertook from memory to give the various items of merchandise in his store on February 2nd, and also their value. In the aggregate the value of the merchandise so sworn by him to have been in the store amounts to about $4,300. On cross-examination he testified that the total value of the merchandise in the store was between five and six thousand dollars. On re-direct he testified that the value was between $4,500 and $5,000. In

proofs of loss made by him nearly two months after the fire he placed the value at $4,114. This amount was apparently arrived at by the following computation made by a so-called independent adjuster:

"MERCHANDISE STATEMENT.

Mdse. as per bills of purchase from Sept. 24, 1903, to February 3, 1905............$30669.08
Cash purchases from Sept. 24, 1903, to February 3, 1905...................... 14945.00

$45614.08

SALES.

Mdse. sold from Sept. 24, 1903, to February 3, 1905...........$49800.00
Less 20 per cent Gross profit..... 8300.00
Mdse. on hand February 3rd, 1905,         $4114.08

While there was a verdict of a jury in the present case, the amount of the judgment was practically determined by the court before whom the case was tried, as was the judgment in the case against the Royal Insurance Company, the judgment in this case being consistent with the finding of facts in the case last referred to. The particular finding on the subject now being considered was as follows:

"1. The court finds from the evidence in this case that the fair market value of all the merchandise in the premises referred to in plaintiff's declaration in this case was, on January 31, 1905, the sum of $713.94; that the plaintiff purchased between the date of the fire of January 26, 1905, and February 3, 1905, merchandise of the fair market value of $700.00; that the plaintiff sold during the last 2 1-2 days preceding the fire of February 3, 1905, merchandise of the fair market value of $250; that there was in the premises

referred to in plaintiff's declaration at the date of the fire of February 3, 1905, merchandise of the fair market value of $1,163.94.''

The policies in both cases all contained the following provision: ''This entire policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after the loss.''

The contention of the appellant in this case, as well as that of the Royal Insurance Company in the case against it, is that the policy is void (a) because of the fraud and wilful false swearing of the plaintiff below with regard to the cash value of the merchandise on the premises on the 3rd of February, 1905, and (b) because of the fraud and false swearing of the plaintiff below in the proofs of loss to the effect that the fire did not originate by any act, design or procurement on the part of the insured.

A careful study of the many cases cited by the parties to the controversy convinces us that the case is unique in many particulars. The court below has found that so far as the merchandise is concerned, the clauses in the policies covering it were in amount nearly four times the actual value of that merchandise. He also finds that the value of the stock in appellee's store on January 31, 1905, was correctly stated in the inventory prepared by or under the direction of the appellee on that date, namely $713.94. He bases the amount of the judgment in each of the cases upon this inventory, and accepts the testimony of the appellee that within the 2 1-2 days after the inventory was made and the occasion of the second fire appellee had made a net addition of $450 to the value of the stock, thus fixing the value at $1,163.94 on the day of the second fire.

The court in the case against the Royal Insurance Company held, and we believe correctly, the following proposition of law:

"4.   If the court finds from the evidence in this case that the plaintiff, Spiros Kavooras, wilfully and intentionally made false statements to the defendant in sworn statements made by him in certain proofs of loss furnished by the plaintiff to the defendant of the value of the stock of merchandise in the premises referred to in the plaintiff's declaration, at the time of the fire, namely, February 3, 1905, then each of the polices declared upon by the plaintiff in this suit is void, and the court must enter a finding for the defendant."

The appellant contends, and we think with great reason, that if by his own statement made on January 31, 1905, as determined by the court, appellee had fixed the value of his stock at $713.94, and if as he testified he had added only $450 in value to that stock on the following 2 1-2 days, he could not on March 30, 1905, make oath that the value of the stock on February 3, 1905, was $4,114 without being guilty of wilfully and intentionally making a false statement for the purpose of cheating and defrauding the appellant and the Royal Insurance Company. It is argued also, and again with great persuasiveness, that on the trial of the case four years later the appellee must have made false statements wilfully and intentionally when he testified at one time in the course of his examination that the value of his stock of merchandise was $4,300; at another from "five to six thousand dollars," and again when asked by his counsel on re-direct examination, "from $4,500 to $5,000."

The appellee testified at the trial that he never kept on hand less than $1,400 worth of canned goods, and that canned goods of not less than that value were destroyed in the second fire. The inventory of January 31, 1905, by which the court below held in effect that the appellee was bound, shows canned goods of the value of $173.82. It follows therefore that if his testimony at the trial is to be believed he must have

bought canned goods of the value of more than $1,225 during the two days which intervened between the making of the inventory and the occurrence of the second fire, whereas he testified and the court found that his purchases of all kinds of merchandise during that time amounted to $700 only. The aggregate of the canned goods he claimed in his testimony to have been destroyed was more than 7000 cans. The record shows the amount of shelving in the store, and also contains what purports to be a picture of the interior of the store, offered in evidence by the appellee. The argument has been made by counsel for appellant that there could not possibly have been upon the shelves more than between nine and ten hundred cans, and that the picture indicates that there were not as many as that in the store when the picture was taken.

Many discrepancies in the testimony of the appellee are shown, among them the following: On direct examination he testified that the value of all the nuts that he had in the place was between $100 and $125, not less than $100. On cross-examination he placed the value between $50 and $60.

On direct examination he said his stock of tobacco and cigars was worth between $175 and $200, while on cross-examination he placed the value at $125 to $135.

On direct examination he said his stock of candy was worth from $150 to $165, not less than $150; on cross-examination he testified that the value of the candy on hand was $75 to $100.

On direct examination he testified that the total value of flour in sacks and barrels was about $135. On cross-examination he stated that the value was not less than $175, etc.

We have carefully read all the testimony in the case as it appears in the record, and are of the opinion that the court rightly reached the conclusion that the value of all the merchandise in the store did not exceed $1,-

163.94. We cannot, however, agree with the trial court in the conclusion that he must have reached in order to justify the entering of the judgments in the two cases,—that the appellee was not guilty of false swearing in the proofs of loss which he made on March 30, 1905, and in the testimony which he gave at the hearing of the case.

The amount of the policies covering the merchandise aggregated more than four times the value of such merchandise. There is a dispute in the testimony as to whether or not the Insurance Company of the State of Illinois knew of the existence of the other two policies. The agent who issued the policy and fixed the amount testified that when the policy was issued, in his opinion $1,300 was all that should properly be carried upon the stock and fixtures; that he refused to issue a policy for a larger amount, and was told by Kavooras that he had no other insurance. On the other hand, Kavooras testified that he told the agent that he did have other insurance and that the agent then consented to issue and did issue the policy in question.

At the first fire small damage was done, but just before the occurrence of the second fire the clerks who theretofore had been sleeping in the building ceased to occupy the rooms at the suggestion or request of Kavooras. Kavooras says that he made the suggestion because of the extreme cold, although nothing is disclosed in the record tending to show that any effort was made to protect the perishable fruits and vegetables which were in the store, while Kavooras testified that it had been his custom to keep fires in the store theretofore in order to protect these perishable articles.

We think the over-insurance and the other circumstances of the case completely justfy the conclusion that Kavooras, both in the making of the proofs of loss and in his testimony at the trial was guilty of

wilful false swearing. In the case of Lycoming Fire Insurance Company v. Rubin, 79 Ill. 402, the false statement alleged was with regard to the amount of stock plaintiff had on hand in his premises. After finding that the evidence showed that the value of the stock was not to exceed $1,500, while he had procured, by his representation, an insurance on a value of $3,000, the court held that:

"Where a party, by false representations as to the amount and value of his stock of goods, obtains a policy of insurance upon a valuation at twice the value of the goods, this, of itself, renders the policy absolutely void."

The case of Home Insurance Company v. Mendenhall, 164 Ill. 458, is referred to by the appellee. In that case it appeared that the proofs of loss were made by an adjuster for the Insurance Company, and that the only falsity alleged was as to the condition of the title to the property. The court held that if this had been shown to be a fact by the Insurance Company it would defeat a recovery under the policy. (Page 462.) It appeared in the case, however, that the Appellate Court had found that there was no reason to believe that the assured intended or attempted to commit fraud upon the company, and that no such fraud was shown.

Some of the authorities bearing on the subject are: Va. Fire & Marine Ins. Co. v. Vaughn, 14 S. E. 754; Clafflin v. Insurance Co., 110 U. S. 81; Gies v. Bechtner, 12 Minn. 183.

We think the case is clearly distinguishable from Commercial Company v. Friedlander, 156 Ill. 595 (57 App. 372), and the other cases cited by appellee.

The judgment will be reversed without remanding and a judgment entered here upon a finding of fact.

*Judgment reversed with a finding of fact.*