State *v.* Anderson.

THE STATE, Respondent, *vs.* ANDERSON, Appellant.

1. The bad character of the parents of the prosecutrix is not admissible evidence in behalf of a party charged with rape.

2. At the trial of a negro upon an indictment for an attempt to ravish a white female, the jury is at liberty to find that the averments of the indictment as to color or race and sex are sustained, from seeing the parties in court, and proof that the defendant is a slave.

3. An indictment of a *negro* for an attempted rape is properly framed upon the first clause of the 31st section of the 2d article of the act concerning crimes and punishments, (R. C. 1845,) without reference to the 26th or 37th sections, which are only applicable to rapes and attempted rapes by *white persons.*

4. Neither a civil nor a criminal case will be reversed merely because the verdict was against the weight of evidence.

5. Jurors are the exclusive judges of the weight of testimony. They are not obliged to reject all the testimony of a witness who has testified falsely in one particular.

## *Appeal from St. Louis Criminal Court.*

Anderson, a negro slave, was indicted for an attempted rape upon a white female. The indictment contained two counts. The second, upon which alone the defendant was convicted, was as follows : " And the grand jurors aforesaid, upon their oaths aforesaid, do further present, that John Anderson, a negro man slave, on, &c., at &c., in and upon one Rebecca Ann H., a white female, in the peace of the state, then and there being, violently and feloniously did make an assault, and her, the said Rebecca Ann did then and there attempt, forcibly and against her will, to ravish, and carnally know, against the peace and dignity of the state."

At the trial, the prosecutrix was called as a witness for the State. Other witnesses were also called, and there was evidence tending to sustain the charge of an attempted rape. At the close of the testimony for the prosecution, it had been proved that the defendant was a slave, but no witness had testified that he was a negro man, or that the prosecutrix was a white female.

Two negroes were called as witnesses by the defendant. The State objected to the competency of these witnesses, on the ground that they were negroes, and one of them was a slave. The objection was overruled, and an exception taken. The defendant's counsel put to one of these witnesses the following questions, to which an objection was sustained : " Do you know what the girl's people did for a living ?" " Do you know what the girl's mother did for a living ?"

The following instructions, among others, were given by the court :

" If the jury believe, from seeing the witness, Rebecca, in court, upon the witness stand, that she is a white female, or from seeing the defendant in court, or from the testimony of his being a slave, that he is a negro, these facts are sufficient to support the allegation in the indictment in relation to the color, sex and race of the prosecuting witness and the defendant."

" If the jury believe from the evidence, that the defendant is guilty of an attempt to commit a rape, as charged in the second count of the indictment, you cannot acquit the defendant, because you may believe the witness, Rebecca, is of bad character for virtue, or that she associated with negroes."

" If the jury believe that the witness, Rebecca Ann, has testified falsely to any material matter in this cause, the jury, in such case, ought to reject the whole of her testimony and acquit the prisoner."

Several instructions were asked on behalf of the defendant, which were refused. The jury returned a verdict of " guilty" upon the second count of the indictment. The defendant moved for a new trial and in arrest of judgment. These motions being overruled, he was sentenced to be castrated, and now appeals to this court.

*Lackland & Jamison* and *G. W. Cline*, for appellant, among others, made the following points : 1. The question as to the competency of the negro testimony, introduced by the defendant, does not arise, as the State does not appeal. The

testimony, however, was admissible.   If the defendant was a negro, it is settled by the 22d section of act concerning witnesses (R. C. 1845.)   If he was a white man, still it was admissible in his favor, or else the operation of the statute is to abridge the rights and privileges of the white man.   2.  The testimony as to the character of the parents of the prosecutrix should have been admitted.   The manner in which she was educated, and the influences by which she was surrounded, were material upon the question of her character and credibility. *Camp* v. *State*, 3 Kelly, 420.   3.  The averments in the in-. dictment, that the prosecutrix was a white female, and the defendant a negro, were material and had to be proved.   *Nathan* v. *State*, 8 Mo. Rep. 631.   *Grandison* v. *State*, 2 Humph. 452.   *Elijah* v. *State*, ib.   The court erred in telling the jury they might find that the prosecutrix was a white female, from *seeing* her on the witness stand, and that the defendant was a negro, from seeing him in court, and proof that he was a slave. If this be law, then it would be proper in a larceny case to instruct the jury that they might find the material fact of value from seeing the article, or in a case of passing counterfeit money, that the money was counterfeit or genuine from seeing it in court.   This is in effect telling the jury that they may find material facts from their own individual knowledge, without being subjected to cross-examination.   Under the statute, the question before the jury was not merely one of *color*, but of *race*.   Such questions are often of the greatest difficulty, requiring for their solution scientific skill.   There are albinoes, mulattoes and quadroons, who excel Caucasians in whiteness of skin.   Yet, before the jury could convict the defendant, it was necessary that they should find that he was a negro, and the prosecutrix a Caucasian.   These facts they could only find upon proof.   *Dunbar* v. *Parks*, 2 Tyler, 217.   *State* v. *Powell*, 2 Halst. 244.   1 Starkie's Ev. 543.   *Clark* v. *Robinson*, 5 B. Monroe, 55.   *Burrows* v. *Anderson*, Cox, 203.   Gilpin, 260.   2 Humph. 455.   Ib. 452.   *McGuire* v. *State*, 13 S. & M. 257.   Slavery does not raise the legal pre-

sumption of black color, although the converse is true. *Indians* are held in slavery in many of the states of the Union. *State* v. *Wagner*, 1 Halst. 374. *Deck* v. *Coleman*, 1 Wash. 233. 2 Mo. 69–71. If there was any such presumption in any case, it would be overcome, in a criminal case, by the paramount presumption of innocence. 3 Starkie's Ev. 895. 2 B. & Ald. 386. 4. The indictment is not sufficient. It is drawn upon the first subdivision of the 31st section of the second article of the act concerning crimes and punishments, as though this subdivision alone described an offence, whereas, it only sets forth facts making a compound offence of the one described in the latter clause of §26 and §37 of the same article, and prescribes a different punishment therefor. The offence which should have been charged was, an assault *with intent* to commit a rape, as described in §37, by forcibly ravishing, as mentioned in the latter clause of §26, under the additional circumstances of the prosecutrix being a white female, and the defendant being a negro or mulatto. A general charge of *an attempt* to commit a rape no more describes an offence than would a general charge of violating the statute, which is not sufficient. *Kliffield* v. *State*, 4 How. (Miss.) 306. 3 Blackf. 29. Hale P. C. 229, §68. Bac. Abr. 570. 1 Chitty's Crim. Law 232. *Anthony* v. *State*, 13 S. & M. 263. *State* v. *Gatewood*, 4 Ohio, 386. Breese, 197. 1 English, 519. 5. The punishment which the statute affixes to the offence of which the defendant was convicted, is unconstitutional, being "cruel and unusual."

*H. A. Clover*, for the State, among other points, argued the following : 1. The indictment followed the language of the 31st section upon which it was framed, and was sufficient. It was not necessary to allege the *manner* in which the attempt to ravish was made, nor that the defendant assaulted *with intent* to ravish. In the case of a negro, the statute makes the offence to consist in the *attempt* to commit a rape. The 34th and 37th sections, which speak of an assault *with intent* to ravish, describe the same offence when committed by white per-

sons.	3 Gill & J. 8.	4 Hill, 133.	8 Humph. 585.	3 Eng.
400.	2. The court correctly told the jury·that they might find
the color of the parties from seeing them in court, and proof
that the defendant was a slave.	Where no question was made
as to whether the prosecutrix was of mixed blood or not, it
was merely idle to call a witness to tell the jury *from inspec-*
*tion* that the prosecutrix, who had testified before them, was
white, which the witness would have no better means of know-
ing than the jurymen themselves.	The instruction upon this
point was founded upon reason and common sense.	There may
be cases where it would be necessary to prove color, as where
the prosecutrix was dead or absent.	4 Humph. 272.	2
Humph. 456.	3. The constitution was only made for citizens,
which the defendant is not.

Scott, Judge, delivered the opinion of the court.

Anderson, a slave, was indicted for an attempt to ravish a
white female over ten years of age, in St. Louis county, of
the name of Rebecca Ann Hewett.	The indictment, after the
usual beginning, charges that Anderson, in and upon the said
Rebecca, violently and feloniously did make an assault, and
her, the said Rebecca Ann Hewett, did then and there attempt
forcibly and against her will to ravish and carnally know.

1. On a trial, the defendant was convicted.	The following
questions were asked : " Do you know what the girl's people
did for a living ?	Do you know what the girl's mother did for
a living ?"	The State objected to these questions, and they
were ruled out, and exceptions were taken.

We see no error in this action of the court.	A child's teeth
shall not be set on edge because its father has eaten sour
grapes.

2. As the prosecutrix had appeared as a witness before the
jury, and as the defendant was in court and arraigned in the
presence of the jurors, and as it had been proved that he was
a slave, there was no error in telling the jury that, from these

circumstances, they might find that the prosecutrix was a white female and the defendant a negro.

3. It was proper to frame the indictment under the first clause of the 31st section of the second article of the act concerning crimes and punishments. That section alone related to rapes and attempted rapes by negroes and mulattoes. The 37th section of the same article relates to assaults, the punishment for which is not hereinbefore prescribed. As the punishment for the offence charged in the indictment had been prescribed by the 31st section, that crime was not embraced in the 37th section. It is only necessary to read the article to be satisfied that the 37th section has nothing to do with attempts to commit rapes by negroes. Many offences had been enumerated, and no provision had been made for the punishment of attempts to commit them. This section was intended to supply those omissions. Provision had been made for punishing attempts by negroes to commit rapes, therefore such offences by them are not within the section.

4. Many reasons were urged to show that the verdict in this case should be set aside. We know no distinction between civil and criminal cases. When the verdict of a jury comes here endorsed by the refusal of the court which tried the cause to grant a new trial, this court will not interfere on the ground that the evidence does not support the verdict. Jurors are the appropriate judges of the facts, as the courts are of the law.

5. It would be useless to review each instruction that was given and refused. Such a course would be of little or no advantage in future trials, as the points of the instructions turn mostly on their phraseology and involve no principle. Some of them are mere comments on the evidence, or charges to the jury as to matters of fact, which the law forbids being given without the consent of both parties. R. C. 882, section 28. What is striking in the instructions is, the attempt of the court to prescribe rules to the jury by which they were to ascertain the credit due to a witness. When a witness testifies to jurors, they are the exclusive judges of the weight to be

given to his testimony. The rule, *falsus in uno, falsus in omnibus*, has little to do with jury trials. It was adopted in chancery, where causes are heard on depositions, but we see no necessity for its application to jury trials, where the witnesses are present and are seen and heard by the jurors. No jury qualified for the trust would convict on the uncorroborated evidence of witnesses, who, they believed, had wilfully sworn to a falsehood. The defendant was not prejudiced by any instruction of the kind alluded to, given by the court.

The other judges concurring, the judgment will be affirmed.