AGNES PAULETTE, Plaintiff in Error, *v.* JAMES G. BROWN, Defendant in Error.

1. *Bills and Notes—Endorsements—Title.*—A party taking from the agent of the payee a note endorsed in blank, before maturity, in good faith, as a collateral security for debt of a third party, is not affected by the fraud of the agent in disposing of the note.

2. *Evidence—Witness—Practice—Contradiction.*—It is proper to instruct a jury, that if a witness has wilfully and knowingly sworn falsely to any material matter in the case, then the jury are authorized to discredit the whole of the testimony of said witness.

*Error to St. Louis Circuit Court.*

*Garesché* and *Mead*, for plaintiff in error.

I. The instruction in regard to the witness Tallis, at instance of defendant, should have been refused ; because such instructions are improper.

Paulette v. Brown.

The old decisions would sustain it—State v. Mix, 15 Mo. 153; Gillett v. Wimer, 23 Mo. 79, and State v. Dwier, 25 Mo. 554. But later authorities repudiate them—State v. Cushing, 29 Mo. 217, where the court declares such an instruction to be an invasion of the province of a jury; and State v. Stout, 31 Mo. 406, where such instructions are regarded as unusual; and Blanchard v. Pratte, 37 Ills. 246, where perhaps the correct rule is to be found.

II. The test whether the transaction is usurious because a loan and not a purchase, is, could the endorser in a suit against the maker have recovered? If a mere accommodation endorsement, he could not for want of consideration; and therefore, in such a case, the transaction is a loan, and, if for excessive interest, usurious. Hence, as Wimer's endorsement was for accommodation, it was not a purchase from him by the defendant, but a loan by the latter to Castello.— Jones v. Hake, 2 John's Cas. 60; Wilkie v. Rosevelt, 3 id. 66; Marvin v. McCullum, 20 J. R. 288; Corcoran et al. v. Powers et al., 6 Ohio (N. S.) 19, and distinctions drawn between business and accommodation paper, Clark v. Sisson, 4 Duer, 408.

III. Because defendant's loan to Castello was usurious, plaintiff should recover.

*Cline & Jamison,* and *Comfort,* for defendant in error.

I. The fact that the notes in controversy were taken by the defendant as collateral security can, under the circumstances, subject him to no equities that may exist in favor of the plaintiff as to parties taking with notice of the facts.

The jury have found the fact to be, under the second instruction given for the plaintiff (appellant), that " the endorsements on the two notes sued for, and the circumstances under which they were pledged, were not sufficient to put a man of ordinary prudence on his guard, or to cause him to institute inquiries as to whether the party pledging the notes had the right and authority to pledge said notes." For the law is well settled that a party who takes a negotiable prom-

issory note before maturity, without notice of any facts which impeach its validity as between the antecedent parties, as a collateral security for an antecedent debt, even if there is no new consideration at the time of taking such security, is a holder for a valuable consideration, and will not be affected by any equities between the original parties. This doctrine is fully borne out by the following authorities : Bosanquet v. Dudman, 1 Stark. 1 (1814); Ex parte Bloxham, 8 Ves. Ch. p. 53 (1803) ; Heywood v. Matson, 4 Bingh. 499 (1828) ; Percival v. Frampton, 2 Cromp. Mees. & Ros. 183 (1835); Poirier v. Morris, 20 Eng. L. & Eq. 113 (1853) ; Smith's Merc. L. 320, note; Swift v. Tyson, 16 Pet. 19–22 (1842); Pugh v. Durfee, 1 Blackf. 414 (1849) ; Goodman v. Simonds, 20 How. 370 (1857) ; Chickopee Bk. v. Chapin, 8 Metc. 43–4 (1844) ; Blanchard v. Stevens, 3 Cush. 168 (1849); Atchinson v. Brooks, 26 Vt. 575 (1854) ; Allain v. Hartshorn, 1 Zab. (N. J.) 667 (1847); Carlisle v. Wishart, 11 Ohio, 191–2 (1842); Vallette v. Mason, 1 Smith (Ind.) 89 (1849); Greeneaux v. Wheeler, 6 Texas, 527 (1851) ; Robinson v. Smith, 14 Cal. 98 (1859); Grant v. Kidwell, 30 Mo. 455; Story on Bills, § 192; 3 Kent's Com. 8, note 31, ed. 1848.

It will thus be seen that the principle of law above contended for is established in England, in the Supreme Court of the United States, in Vermont, Massachusetts, New Jersey, Ohio, Indiana, Texas and California, and that it has the high sanction of Lord Mansfield, of Story, and of Kent.

The fact that the notes in controversy were endorsed by Thomas Tallis as " curator " does not subject them in the hands of the holder to any equities existing between antecedent parties. The notes in question belonged, it is alleged, at the time they were negotiated, to the plaintiff. Now the fact is that Tallis was not curator of the plaintiff, nor in fact did he hold any fiduciary relationship to her; but he was curator of her children, who had no interest in the notes.— Powell v. Morrison, 35 Mo. 244; Jeffries v. McLean, 12 Mo. 538; Thornton v. Rankin, 5 Mart. La. (N. S.) 703.

II. There was no error in the first instruction given for the defendant, to the effect that the jury, if they found that Thomas Tallis wilfully and knowingly swore falsely to any material matter in the case, then they were authorized to discredit the whole of his testimony. "If a witness wilfully testifies falsely to any material fact in the case, the jury are authorized to discredit and reject the whole of his testimony."—State v. Mix, 15 Mo. 153; Gillett v. Wimer, 23 Mo. 77. State v. Cushing, 29 Mo. 217, and State v. Stout, 31 Mo. 406, quoted by the appellant as being adverse, are both cases in which the jury were directed (not authorized) to disregard the whole of the testimony of the witness.

FAGG, Judge, delivered the opinion of the court.

This case is here upon a writ of error to the Circuit Court of St. Louis county. The suit was instituted under the provisions of the statute in relation to the claim and delivery of personal property.

Two negotiable promissory notes, each for the sum of $1,050, executed by one Tesson, and made payable to the order of the plaintiff, were the articles of property sued for. They were alleged to be in the possession of the defendant, and by him wrongfully withheld from the plaintiff. She states in her petition that "one James Castello, without her knowledge, consent or authority, placed the same in the hands of defendant as collateral security for the payment of a certain note of said Castello, dated April 28, 1860, payable six months after date to the order of John M. Wimer, for eighteen hundred and seventy-five dollars." It was further averred that "said notes had not been traded, sold or negotiated to or with any one, but that they had been placed by plaintiff in the hands of her friend Thomas Tallis for safe keeping merely, and that if he or any one else had allowed said Castello to have or receive them, it was without her knowledge or consent." Judgment was then asked for the recovery of the property and for damages. The allegations as to the ownership of the notes, as well as their wrongful

detention by the defendant were specifically denied. The answer sets out at length the facts and circumstances connected with the defendant's possession of the property, and claims that he was rightfully the holder of the same by means of a transfer taken in good faith and for a valuable consideration. The case was tried by a jury and resulted in a verdict for the defendant. The real question for the consideration of the jury was simple in its character, and as no objections were made at the trial as to the admissibility of testimony, the only questions for our consideration here relate to the declarations of law which were given and refused by the court. It appears that the note of Castello, drawn in favor of Wimer and by him endorsed, was negotiated through the agency of one Hunt, a note broker, and one Thomas Tallis, mentioned in the petition as the person with whom the notes in controversy had been deposited for safe keeping. They were endorsed in blank by plaintiff, and at the time of transfer to the defendant were also endorsed by the said Tallis, who attached to his name the word "curator."

Much importance seems to have been attached to this fact at the trial as being sufficient of itself to put the defendant upon his inquiry as to the power and authority of Tallis to transfer them by endorsement. It was not pretended at all that the defendant had obtained possession of the notes by fraudulent means, or that he had knowledge of the fact that they were really the property of the plaintiff, and that the transfer was against her knowledge and consent; but the right to recover seems to have been based mainly upon the ground that the circumstances attending the endorsement by Tallis were sufficient to affect the defendant with notice of the fact of his want of authority to make the transfer, or at least to put him upon his inquiry, and all of the instructions asked by plaintiff, with perhaps one exception, were directed to that one point alone. It is sufficient to say of the instructions given at the instance of plaintiff that they presented the law in a light most favorable to her. Those refused were

all, with one exception, to the same effect substantially, and differing only as to form. This question having been thus fairly presented to the jury, the verdict must be taken to be conclusive on that point. The instruction asked by the plaintiff in reference to the character of the contract between Castello and Brown in the purchase of the note mentioned, was properly refused. Whether that contract was usurious or not, can in no sense affect the controversy between these parties.

The only remaining point to be considered is the propriety of the following instruction given at the instance of the defendant: "If the jury find that Thomas Tallis wilfully and knowingly swore falsely to any material matter in this case, the jury are authorized to discredit the whole of the testimony of said Tallis." The giving of this instruction seems to be relied upon as the chief ground of reversal, and therefore demands a more extended notice than any other point raised in the case.

It is contended here that the rulings of this court upon this point, in the cases in which it has heretofore arisen, are somewhat conflicting, and it is therefore considered necessary to review the opinions in those cases for the purpose of ascertaining whether there is such a conflict, and if so, to lay down a rule now which shall conform as near as may be to the more modern opinions upon this subject.

In the case of the State v. Mix, 15 Mo. 153, such an instruction was held to be proper, without the assignment of any reason for the ruling. In the case of Gillett v. Wimer, 23 Mo. 77, the same question was before the court, and Judge Ryland, in delivering the opinion of the court, cited the case of the State v. Mix, and said that the decision in that case was considered to be "declaratory of principles well established."

The case of the Santísima Trinidad, 7 Wheat. 283, was also cited, and the opinion of Judge Story quoted at length in the application of the maxim *falsus in uno, falsus in omnibus.*

The very point discussed in this quotation was as to a modification of this rule.

It had been contended, as it is here, that the rule was too broadly stated, and that if the testimony of the witness as to other material facts in the case is corroborated by other evidence it would be improper to exclude that portion, although it might be shown to be false as to another fact. The learned judge said, "that position may be true under circumstances; but it is a doctrine which can be received only under many qualifications and with great caution."

In the case of the State v. Dwier, 25 Mo. 553, an instruction had been refused almost identical in language with the one under consideration, and substantially the same with those passed upon in the cases heretofore referred to. Judge Richardson, in delivering the opinion of the court, said :— " When a witness is contradicted in a material fact, it is for the jury to pass on his credibility ; and the party against whom the evidence is given *is entitled to the declaration of law from the court contained in the refused instruction.*" It is a fact worthy of notice that Judge Richardson would have gone a step farther in that case if he had not been restrained by a majority of the court. He says: "In my opinion, if the jury believe that a witness has wilfully testified falsely in respect to any material fact, *it is their duty to disregard the whole of his testimony, and they should be so instructed by the court;* but the other members of this court think that the jury ought only to be told that they *may* do what I think they are *bound* to do."

In the case of the State v. Cushing, 29 Mo. 215, Judge Napton, in commenting upon an instruction which is not set out in full either in the statement of the case or the opinion of the court, after declaring that it was properly refused by the Circuit Court, proceeds to say that it was " an instruction directing the jury to disregard the entire evidence of a witness if they believe him false in any particular. Such instructions invade the province of the jury, whose business

Paulette v. Brown.

it is to determine the credibility of witnesses, and who are not to be hampered in exercising their judgment by any inflexible rules on the subject." No allusion whatever is made in this opinion to the former decisions of the court upon that question, and nothing from which even an inference can be drawn that the point then under consideration was the same that had been passed upon in the former decisions. We cannot believe from the general statement of the substance of the instruction, and the language of Judge Napton, that there was any intention of overruling the former cases, and therefore conclude that the question before the court was not considered to be the same. In the case of the State v. Stout, 31 Mo. 406, as we understand the opinion of the court, the judgment of the court below was reversed, not alone because an instruction similar to the one under consideration had been given, but because that, taken in connection with another asked by the defendant and refused by the court, in the language of Judge Napton, "had a tendency to withdraw from the jury altogether the question of self-defence." It is true that he says further, "it is not usual for a court to point out a particular witness, and tell the jury to disregard his testimony if they think he has testified falsely in any material particular"; but this must only be taken in connection with what immediately follows as a part of the same sentence: "and when this is done, and all instructions upon the de fence which this witness' testimony tends to establish are refused, the jury must understand the court to be of opinion that no case of self-defence is made out; *in other words, that the testimony of the suspected witness is entirely unworthy of credit.*" It is very clear that if a case should be so presented to the jury, by the declarations of law given by the court, as to interfere with the acknowledged province of the jury in passing upon the credibility of witnesses, that it would be erroneous. Such seems to have been the conclusions of the court upon an examination of the whole record in the case last cited, and we are therefore of the opinion that it was not

intended in that case to declare a rule inconsistent with the one established in the former adjudications of this question.

The case of Blanchard et al. v. Pratt, 37 Ills. 243, is relied upon by the counsel for plaintiff in error as containing the true statement of the rule of evidence in this case. The question in that case is almost precisely similar to the one under consideration, and the judge, in delivering the opinion of the court, holds this language in reference to the giving of such an instruction: " We do not understand this to be the rule of evidence, laid down, as it is, so unqualifiedly. A witness may swear falsely as to one important fact, but in regard to other facts he may be corroborated by the testimony of other witnesses. In such case the jury would not be justified in discarding his whole testimony; therefore the court should have added the words, " unless corroborated." With all proper respect for this authority, it is difficult to perceive how the addition of these words could really change the meaning and effect of the instruction as it would stand without them. It is drawn upon the assumption that it is exclusively the province of the jury to pass upon the credibility of the witness, and simply directs them, in determining that matter, to take into consideration the fact (if proved to their satisfaction) of the falsehood of the witness as to any material matter. This may, according to the facts and circumstances of the case, extend to the exclusion of the whole testimony, if unsupported by other sufficient evidence, or to any portion of it that may stand uncorroborated. In other words, there is no invasion of the province of the jury, and nothing appears upon the face of such a declaration that could lead a rational mind to suppose that it was intended as a positive command to the jury to disregard it.

We conclude, therefore, that the rule was correctly stated, and that the court committed no error, and the judgment must be affirmed. The other judges concur.