The State v. Ralph Willard, Appellant.—142 S. W. (2d) 1046.

Division Two, September 10, 1940.*

*Note: Opinion filed at May Term, 1940, July 3, 1940; motion for rehearing filed; motion overruled at September Term, 1940, September 10, 1940.

774

*C. A. Powell* for appellant.

*Roy McKittrick,* Attorney General, and *Arthur O'Keefe,* Assistant Attorney General, for respondent.

776

ELLISON, P. J.—The appellant was convicted of grand larceny in the circuit court of Stoddard county for stealing a cow belonging to Carrott Moss, and his punishment assessed by the jury at two years' imprisonment in the penitentiary. He assigns error: (1) on the trial court's refusal to discharge the jury because of improper statements, questions and argument by counsel for the State in the presence of the jury panel and the jury; (2) on the giving of improper instructions; (3) on the admission of irrelevant and incompetent testimony; (4) and because the State's evidence was insufficient to make a prima facie case.

Considering the last assignment first, we entertain no doubt that the State made a case for the jury. Witnesses Robinson and Wilfong testified that they and one Hastings stole the cow; trucked it to Cape Girardeau and there sold it for $45; and divided the net proceeds into fourths, one portion being paid to appellant who made the arrangements for the foray and furnished the truck and driver. These two witnesses had originally been included as defendants in the information against appellant, and the charge was dismissed as to them. This may have affected the weight of their testimony, and there was also substantial evidence tending to exculpate the appellant. But the State's evidence was strong enough to warrant the trial court in submitting the issues of fact to the jury.

The next assignment complains of the trial court's failure to quash the jury panel because one of the three lawyers conducting the prosecution stated in the presence of the panel while the two other attorneys were in another room making the State's challenges, that "it doesn't make any difference who is taken off. We would as soon try the case before any twelve." The lawyer so accused declared he didn't think the jury heard the statement, and that what he said was uttered in the following connection. He had been out with the two other attorneys making the challenges and came back into the court

room to ask the judge for a little additional time. The judge directed him to go back and complete the challenges, saying he was too slow, whereupon the attorney replied (according to his version): "I don't care who they take off. I am willing to try it before any twelve," meaning he wanted to let the two other lawyers finish the challenges without him.

Timely objection was made by appellant's counsel and a long colloquy followed, covering nearly six pages in the bill of exceptions, during which the court threatened to fine "somebody" $25. Appellant's counsel interjected they were not asking that, but did want the panel discharged. Then the members of the panel were interrogated and it turned out that only two of them had fully heard and understood the statement, but these two were among the twelve jurors chosen. (This latter was because the court reporter could not be found when the remark was made, so at the court's suggestion appellant's counsel had proceeded to make their challenges before the above colloquy started.) All the prospective jurors declared their minds were not affected in any way. The court then vigorously rebuked the offending attorney for the State and instructed the jury totally to disregard the remark. In the course of these instructions the jury were told the State's counsel evidently had some preference between the members of the panel because they took so long to make their challenges; and that under the statute the State could make four and the defense eight peremptory challenges with or without cause. Also, in the same connection, permission was offered appellant's counsel to remake their challenges, which they refused to do saying they had already exhausted them. No complaint against any of the jurors on any other ground was made by appellant, and nobody suggested that two or more talesmen be called to complete the panel, in lieu of the two who had heard and understood the statement but declared they were unaffected by it.

Appellant's brief cites the statement in 16 C. J., sec. 2528, pp. 1076-7, that "it has been held erroneous to ask, in the presence of the jurors, consent that they be allowed to separate;" and also calls attention to Sec. 23, Rule 35 of this court, which says: "All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing . . ."

We will concede that such general conduct on the part of counsel after the jury is chosen possibly might be regarded as prejudicial error in some cases. But to express a willingness to try a case before any twelve men selected from the panel could hardly be regarded as flattery justifying a quashal of the whole panel on that ground alone, because it would be obvious to the twelve jurors chosen, even if the

remark had not been made, that counsel were willing to submit the case to them. The only jurors that could be offended would be those stricken from the list by the adversary litigant; and, of course, they would not sit in the case. If other cases were to be tried later by the same litigant or counsel before jurors drawn from the same panel, such statements might be unfair to them. We emphatically do not endorse such conduct—as is evident from our rule above quoted—but we cannot hold the statement under consideration injected prejudicial error into the case on the ground of fawning and flattery.

Indeed counsel for appellant do not make that contention in the argument in their brief. What they urge is that when a lawyer on one side of the case announces in the hearing of the jury his willingness to waive oral argument (as denounced by the above rule); or when he offers to submit the cause to any twelve members of the panel without making challenges—by such strategy he impliedly professes confidence in his case regardless of argument or who tries it, and thereby forces the other side to make a similar announcement or else be put at a disadvantage. That may be true to a degree, but we cannot believe such innuendo had an overpowering effect on the minds of the jury beyond the cure of interrogatories and admonitions as strong as those flung at them by the court in this case. The rule is settled that the trial judge has a large discretion in determining whether counsel's remarks are so prejudicial as to necessitate discharge of the jury. And while the trial court here expressed grave doubt on the question—in fact, practically stated in lecturing counsel that he thought the error was reversible—still he did let the case go to the jury. We hold the latter action was proper. How far our decisions have gone in more aggravated instances is shown by the following: State v. Raines, 333 Mo. 538, 541, 62 S. W. (2d) 727, 728; State v. Nichols, 327 Mo. 1237, 1244, 39 S. W. (2d) 777, 780; State v. Kowertz, 324 Mo. 748, 755, 25 S. W. (2d) 113, 117.

Appellant's counsel further say in their brief they are under the impression that there is a recent decision of this court dealing with a question very similar to the one here under discussion, which they have been unable to find. We do not know what it is unless it be State v. Banton, 342 Mo. 45, 52, 111 S. W. (2d) 516, 520, mentioned in another connection in appellant's brief and in the instant connection in the Attorney General's brief. That case branded as prejudicially erroneous the statement of a prosecuting attorney in his *voir dire* examination of a jury panel that the defendant had taken a change of venue. The opinion quotes an excerpt from State v. Wright, 161 Mo. App. 597, 604, 144 S. W. 175, 178, where a circuit judge in the presence of a jury panel scathingly denounced the vicious practice of taking changes of venue on false grounds. The defendant had taken a change of venue, and moved to quash the panel.

The members of the panel were questioned under oath as to whether

they had been prejudiced against the defendant by the court's remarks, and all answered in the negative. But the Wright decision held that although the judge's remarks were true, still they ought not to have been uttered in the presence of the jurors; and that "it will not do to say the jury were uninfluenced by what they heard because they *thought* they were free of prejudice and could give defendant a fair trial." (Italics ours.) Then the opinion went on: "The question is whether the remarks . . . were such as to prejudice defendant in the minds of ordinary men in the situation of the jury, not whether . . . this particular group of men believed they were not influenced against the object of the criticism. Men often are deluded into believing they are in a fair frame of mind, when they are blinded by prejudice."

These quotations from the Wright case appear in the Banton case. What they say is true where the remarks made were so poisonous that a court would be bound to hold them prejudicial as a matter of law. Nevertheless the actual question for decision is whether the particular jury was prejudiced, not what some hypothetical reasonable minded jury would have thought—except insofar as the latter standard is used to measure the effect of the remarks on the particular jury. Where the question is one of mixed law and fact the trial court has, as we have already stated, a wide discretion, and undoubtedly may take into consideration the ability, predilections and aversions of the particular jury or panel, and may interrogate them as to the effect of the remarks upon their minds. This has been done many times, and always is done in the *voir dire* examinations of the panel. We see nothing in this case to take it out of the usual rule, and this assignment is accordingly disallowed.

█ The next assignment complains of the trial court's refusal to discharge the jury because of the following incident. After the appellant had testified and the defense rested, one of the special counsel assisting the State called a witness to the stand for the announced purpose of proving the appellant's reputation. Over the appellant's objection the attorney was permitted to ask the question, which inquired as to the appellant's general reputation in the community *as a law abiding citizen*! The court promptly sustained the appellant's objection; instructed the jury to disregard the question; and rebuked counsel, stating in the presence of the jury the law had been settled for 35 or 40 years that such reputation testimony is admissable only when the defendant has put his own reputation in issue— which was a correct statement. [State v. Williams, 337 Mo. 884, 895-6, 87 S. W. (2d) 175, 181, 100 A. L. R. 1503.] Special counsel for the State nevertheless made an offer of proof out of the hearing of the jury, still contending he thought his view of the law was correct.

Since the question was not answered, and in view of the court's

prompt ruling against it and rebuke, there was no reversible error. [State v. Miles, 199 Mo. 530, 560, 98 S. W. 25, 33 (10).] Neither did the court err in permitting the question to be asked, because counsel for the State had disclosed only that he proposed to inquire about the appellant's reputation—he did not say for what—and appellant's reputation for truth and veracity could have been attacked for the purpose of impeachment since he had testified as a witness. [State v. Williams, supra, 337 Mo. l. c. 894(6), 87 S. W. (2d) l. c. 180(9), 100 A. L. R. 1503.]

Another assignment contends the court should have sustained appellant's motion to discharge the jury because of prejudicial opening argument by the prosecuting attorney. He said he inferred from the evidence that the appellant's sore eyes compelled him to obtain as helpers in the commission of the larceny the two accomplices who had testified as witnesses for the State. Then he continued: "Otherwise he might have plied his trade of cattle stealing in peace." Appellant's counsel objected that the statement was abusive and highly improper, but did not ask that the jury be instructed to disregard it. However the prosecutor did attempt to withdraw the remark, but the court said: "You can't withdraw it. The objection is sustained. There is no evidence here that that is the trade of the defendant and that is most reprehensible argument." The prosecutor said, "Yes Sir." But the court overruled appellant's subsequent motion to discharge the jury. The prosecutor continued his argument and presently wound up by asking the jury to return a verdict "against this defendant, who surely was the leader of a gang." Appellant objected and the court sustained the objection, but this time there was no request for a rebuke, withdrawal, or the discharge of the jury.

Appellant cites on this assignment the Banton case, discussed in the fourth, fifth and sixth preceding paragraphs. We are unable to see its applicability, unless appellant means to argue the prosecutor's remarks were incurably prejudicial as a matter of law. He also cites State v. Ransom, 340 Mo. 165, 177, 100 S. W. (2d) 294, 299, where the prosecutor in his closing argument declared the defendant "makes his living off the people by robbery and sticking up." The defendant objected and asked that counsel be reprimanded and the jury discharged. The court sustained the objection and administered a rebuke, but did not discharge the jury. The defendant did not renew his request for the discharge of the jury, or save exceptions. On appeal this court held he had seemingly acquiesced in the trial court's ruling and would not be heard to complain.

We are asked by appellant here to interpret the Ransom case as meaning that if the defendant there had pressed and preserved his point this court would have ruled favorably on it. That does not follow. Furthermore, the whole argument of the prosecutor is not

preserved in the bill of exceptions; neither is that of his associate counsel, nor of counsel for appellant. The ruling on the impropriety of the prosecuting attorney's remarks was in favor of appellant and came at the beginning of the argument. His counsel had ample opportunity to present their views afterward. The trial court had a discretion which it exercised; and considering all that occurred we see no ground for reversal. [State v. Gabriel, 342 Mo. 519, 526-7, 116 S. W. (2d) 75, 78-9; State v. Nasello, 325 Mo. 442, 467, 30 S. W. (2d) 132, 142.]

Without the citation of authority appellant assails the State's Instruction No. 3 on the presumption of innocence and burden of proof, on the theory that the clause which we have italicized in the closing sentence thereof conflicted with the preceding part declaring the presumption. That sentence said: "However, a doubt to authorize aquittal on that ground alone must be a doubt arising from the consideration of the testimony as a whole *and not a mere possibility that the defendant may be innocent.*" Appellant contends that if under the evidence there is a mere possibility of innocence, then there can be no conviction beyond a reasonable doubt, or, stated conversely, that there must be a reasonable doubt of guilt if there is a mere possibility of innocence. The law of this State on that point has been as declared in this instruction ever since the decision of State v. Nueslein, 25 Mo. 111, 124, in 1857. [See also State v. Smith, 332 Mo. 44, 50, 56 S. W. (2d) 39, 42(6); 16 C. J., sec. 2401, p. 993.]

The second paragraph of the State's Instruction No. 4 on the credibility of witnesses also is challenged by appellant. It said: "If you find that any witness has wilfully sworn falsely to any material fact at issue in this cause, you should disregard such part of his or her testimony and are at liberty to disregard the entire testimony of such witness, which you may conclude *from all the testimony* is not worthy of belief."

This charge follows a form upheld in State v. Tucker, 333 Mo. 171, 179 (8), 62 S. W. (2d) 453, 456(8). It seems to be the same as one summarized and sanctioned in State v. Clark (Mo. Div. 2), 111 S. W. (2d) 101, 103(3); and is like one approved in State v. Ransom, supra, 340 Mo. l. c. 175(8), 100 S. W. (2d) l. c. 298(9), and State v. Wilkins (Mo. Div. 2), 100 S. W. (2d) 889, 895(17), save for the phrase we have italicized which is omitted from the instruction considered in those two cases. The infirmity urged in the Ransom and Wilkins cases was that the charge authorized the jury to disregard the testimony of any witness for any reason—that is to say, independent of whether they believed the witness had sworn falsely or not. Both decisions ruled it did not mean that. Appellant in this case asserts the instruction is bad for that very reason. In other words he contends the jury should be told they are at liberty to disregard the entire testimony of any witness whom they conclude is unworthy of

belief, without annexing a proviso that they find such witness has wilfully sworn falsely to a material fact. In support of that view appellant cites such cases as State v. Goffstein, 342 Mo. 499, 507, 116 S. W. (2d) 65, 69(3) ; State v. Loges, 339 Mo. 862, 867 (3), 98 S. W. (2d) 564, 567(3) ; State v. Carey, 313 Mo. 436, 477, 282 S. W. 22, 25(5).

These cases declare the jury are the triers of the facts and may accept or reject all or any part of a witness' testimony according as they find it true or not. That of course is fundamental. They may disbelieve the witness not alone because they think he has wilfully sworn falsely, but also because they consider him mistaken, ignorant, forgetful, visionary, emotional or the like. · But that phase of the law was covered by the first paragraph of the instruction (not set out above) which informed the jury they were "the sole judges of the testimony and the weight thereof and the credibility of the witnesses," etc.

It would have been error for three reasons if the quoted second paragraph of the instruction had gone further and told the jury they were *at liberty* to *disregard* the entire testimony of any witness they considered unworthy of belief for any reason (even though they did not think he had wilfully sworn falsely to a material fact). First, if they wholly disbelieved the witness, they were not only "at liberty" but were bound to discredit his testimony. However, the error of making such a direction permissive instead of mandatory has been held non-prejudicial. See marginal note 1, next paragraph. Second, it would have been prejudicial error to instruct the jury they were at liberty to reject the entire testimony of a witness if they thought he had misrepresented a particular material fact—unless they were further required to find he did so wilfully falsely. [16 C. J., sec. 2442, p. 1017; 14 R. C. L., sec. 11, p. 736; Jacobs v. Danciger, 328 Mo. 458, 471, 41 S. W. (2d) 389, 393 (15), 77 A. L. R. 1237, 1243.] Third, it is error, or at least confusing, to instruct a jury that they may *disregard* the testimony of a witness. Of this more later.

The main purpose of such instructions is to guide the jury in applying the rule of evidence expressed in the maxim *Falsus in uno, falsus in omnibus.* Instructions which merely authorize them to reject testimony they think is false, do not come under the maxim and are useless declarations of the obvious, but not prejudicially erroneous.[1] In the application of the maxim the rule established in this State is that if the jury believe a witness has committed perjury in the case on trial by wilfully swearing falsely to a material fact, they may for that reason alone reject the rest of his testimony,[2]

---

(1)  Flint v. Loew's St. L. Realty & Amus. Corp., 344 Mo. 310, 318(IIIa), 126 S. W. (2d) 193, 197(10) ; State v. Busch, 342 Mo. 959, 968, 119 S. W. (2d) 265, 269(9) ; State v. Reynolds (Mo. Div. 2), 131 S. W. (2d) 552, 556(8).
(2)  State v. Martin, 124 Mo. 514, 521 (IV), 28 S. W. 12, 14 (4).

but cannot be required to do so.[3]  It does not mean they may arbitrarily reject such remaining testimony though they believe it to be truthful.[4]  Neither does it mean they cannot reject it even though there be corroborating evidence.  The doctrine on this latter point is otherwise in some jurisdictions.[5]  But the rule in Missouri is as just stated.[6]  In short, the *Falsus in uno* maxim does not relieve the jury from passing on the credibility of the whole testimony of a false swearing witness or excuse them from weighing it.  An instruction thereon "is nothing more than an affirmative declaration of the power possessed by the jury in determining the credibility of witnesses";[7] and simply advises them that in weighing the testimony of the witness his wilful false swearing in any material particular "furnishes them a reason for disbelieving anything else the witness may have said."[8]

These considerations prompted the statement made at the conclusion of the second preceding paragraph, that it is error, or at least confusing, to instruct a jury they may *disregard* the testimony of a witness.  There is a difference between weighing and rejecting a witness' testimony, and disregarding it.  [12 Words & Phrases (Permn. Ed.), p. 709; State v. Long, 187 Mo. App. 223, 228, 173 S. W. 722, 724.]  The word disregard in common acceptance means to pay no heed to (Webster's New International Dictionary).  It implies the idea of ignoring, whereas the jury is dutybound to weigh and to reject or accept all and each part of the testimony of a witness, as already pointed out.  Analogous instructions have been condemned which stated the testimony of expert witnesses was "merely advisory" and "not binding" on the jury; or that they were "at liberty to consider or to refuse to consider" it.  [Scanlon v. Kansas City, 325 Mo. 125, 148, 28 S. W. (2d) 84, 94; High v. Q., O. & K. C. Rd. Co., 318 Mo. 444, 452, 453, 300 S. W. 1102, 1105; State v. Warren, 326 Mo. 843, 853, 33 S. W. (2d) 125, 129.]

It is true the expression "at liberty to disregard" is frequently found in instructions based on the maxim which have been approved by this court in many cases.  These probably took their cue from State v. Dwire, 25 Mo. 553, 554-5.  But there are numerous Missouri decisions where milder expressions were used, such as "disregard and reject," or "authorized to discredit," or "at liberty to reject," or "may reject and treat as untrue," or "may, if you see fit, reject or

---

(3)  State v. Elkins, supra, 63 Mo. l. c. 158.
(4)  State v. Kelly, 9 Mo. App. 512, 518-9, 73 Mo. 608, 617 (III) ; State v. Barnes (Mo. Div. 2), 204 S. W. 264, 266(6).
(5)  90 A. L. R., p. 78, note; 28 R. C. L., sec. 244, p. 659; 16 C. J., sec. 2442, p. 1018.
(6)  State v. Mix, 15 Mo. 153, 158-9; Paulette v. Brown, 40 Mo. 52, 57-60; Brown v. H. & St. J. Rd. Co., 66 Mo. 588, 599-600; State v. Patrick, 107 Mo. 147, 161-2, 17 S. W. 666, 670; State v. Williams, 304 Mo. 19, 27(II), 263 S. W. 127, 129.
(7)  State v. Barnes, 274 Mo. 625, 628, 632, 204 S. W. 267, 268, 269.
(8)  State v. Barnes, supra, 204 S. W. l. c. 266(6).

treat as untrue." From this it is apparent that when the word disregard has been employed it was only in the sense of paying no heed to testimony *after* it had been weighed and found wanting. But it is misleading. We agree substantially with the annotator in 90 A. L. R. l. c. 81, and think a court has gone far enough when it instructs the jury that if they believe a witness has wilfully sworn falsely on a material issue, they should *consider* that fact in determining the credibility of the rest of his testimony. The wisdom of giving such instructions at all has been questioned. [State v. Anderson, 19 Mo. 241, 246-7; State v. Schoenwald, 31 Mo. 147, 155; Keeline v. Sealy, 257 Mo. 498, 528, 165 S. W. 1088, 1096.] (The opinion in the last case did not receive a carrying vote.) And the rule seems to be settled that the trial court has a wide discretion in giving them; and that refusal thereof usually is not reversible error. [State v. Caviness, 326 Mo. 992, 998, 33 S. W. (2d) 940, 943(9); State v. Williams, 309 Mo. 155, 187, 274 S. W. 427, 436 (14).]

The Attorney General suggests the Ransom case, supra, 340 Mo. l. c. 175(8), 100 S. W. (2d) l. c. 298(9), and the Wilkins case, supra, 100 S. W. (2d) l. c. 895(17), are in conflict with each other on one point we have been considering; and he asks us to clarify the law as declared in them. The instruction construed in both cases was like the one set out at the beginning of this discussion, except for the omission of the italicized phrase. For a proper understanding of what we are about to say the reader will be compelled to refer back to it. The Ransom case held the word "which" in the last clause of the instruction qualified the preceding words "entire testimony;" and that the whole direction meant the jury were at liberty to disregard the entire testimony of a false swearing witness, which testimony they might conclude to be unworthy of belief. The Wilkins case said the same instruction "authorized the jury to disregard the entire testimony of any witness which the jury concluded was not worthy of belief." It did not expressly limit the statement to a false swearing witness, as did the Ransom case, and therein the Attorney General says the two cases disagree; but we think it meant that, since the whole instruction dealt with that kind of witnesses.

All of us, including the authors of the Ransom and Wilkins opinions, are now of the view that both cases put an interpretation on the last direction in the instruction which makes it an unnecessary declaration of the obvious; also that the instruction, if given in that form at all, ought to tell the jury they *should* disregard the entire testimony of a witness if they do not believe it, rather than that they are at liberty to do so. The instruction would be open to the same criticisms even if the word "which" were read as "whom," and the jury were told they are at liberty to disregard the entire testimony of any false swearing witness whom they conclude is unworthy of belief.

We may add the instruction in this case and the Tucker case, supra,

333 Mo. l. c. 179(8), 62 S. W. (2d) 453, 456(8) is further wrong in telling the jury they are at liberty to disregard the entire testimony of any false swearing witness, "which you may conclude *from all the* testimony is not worthy of belief." Under the *Falsus in uno* maxim the jury may draw that conclusion from the fact alone that the witness has wilfully sworn falsely to a material fact—independent of the other evidence. We do not say the errors noted are prejudicial since what the instructions say is true and the vice is understatement. Furthermore, as already observed, a court is not required to give such instructions as part of the law of the case under Sec. 3681, R. S. 1929, Mo. Stat. Ann., p. 3227, and either party may draft and offer one in such form as he desires. It is hard to frame an instruction founded on the maxim which safeguards against every possible misleading implication without cutting down the doctrine. This accounts for the confusion noted in the instructions reviewed. For what is called "the usual form of the instruction" see State v. Williams, supra, 309 Mo. l. c. 186, 274 S. W. l. c. 436(14). However we are not holding it perfect. Appellant's assignment of error against the instruction in this case is overruled, both for the reasons stated, and also because he did not attack it in any of the respects in which we have held it is faulty.

Another assignment complains that the latter part of the State's Instruction No. 7 assumed the disputed fact that the cow was stolen. The part referred to required the jury to find the appellant knowingly aided and abetted his accomplices by furnishing his truck to such of them as actually committed the larceny, for the purpose of stealing the cow. But the latter issue was covered by the first part of the instruction, where the jury were required to find "there was such taking, stealing and carrying away of the cow mentioned in the evidence and the information." There is nothing in this assignment.

Finally, the contention is made that the prosecuting witness and his wife should not have been permitted to testify about inquiries made by them after they missed the cow. It has been stated that such testimony is competent. [36 C. J., sec. 436, p. 879.] And appellant's counsel frankly concede, "However, we doubt that it is prejudicial error." We agree.

Finding no prejudicial error, the judgment is affirmed. All concur.

## On Motion for Rehearing.

ELLISON, P. J.—Appellant asks us to recede from our ruling that the trial court did not commit reversible error in overruling his motion to quash the panel because one of the special prosecutors had interrogated a witness as to the appellant's general reputation as a law abiding citizen. The question was asked after the appellant had

testified, but the defense had not put his reputation in issue. Before the question was answered an objection to it was promptly sustained and the special prosecutor severely rebuked. (See opinion above.) Appellant cites; Sec. 22 of Rule 35 of this court; 16 C. J., sec. 2229, p. 892; State v. Pierson, 331 Mo. 636, 648, 56 S. W. (2d) 120, 124; State v. Teeter, 239 Mo. 475, 485, 144 S. W. 445, 448; State v. Rose, 178 Mo. 25, 35-6, 76 S. W. 103, 106.

Rule 35 of this court announces a code of ethics for lawyers; and Sec. 22 thereof declares a lawyer "should not offer evidence, which he knows the court should reject, in order to get the same before a jury by argument for its admissibility." In this case the State made no argument in the presence of the jury for the admission of the testimony after the question was asked, and really none before, except to say the inquiry would be directed to the appellant's reputation (not stating for what). We think the special prosecutor was subject to censure, but cannot hold the question was of such nature as to poison the minds of the jury beyond the cure of the vigorous rebuke administered by the court. In the cases cited by appellant the transgressions were far more flagrant than here.

In the Pierson case the assistant circuit attorney asked the appellant: "Are you willing to go into this entire transaction, or are there some matters you would rather not discuss?" Thus appellant's statutory right to exemption from cross-examination on matters not covered by the examination in chief was utterly ravished, as the opinion points out. In the Teeter case, a prosecution for seduction under promise of marriage, a female witness introduced for the ostensible purpose of proving defendant's reputation was asked if he had not also seduced her under promise of marriage—an independent crime. Also, it had previously been developed that the witness was unmarried and had a child. In State v. Rose, 178 Mo. 25, 76 S. W. 1003, supra, the defendant was charged with grand larceny, but did not testify. Nevertheless the State put a Justice of the Peace on the stand with his docket, and the prosecutor asked him to turn to the record of another case against the defendant for larceny. An objection was sustained but the court gave no admonition to the jury.

These cases obviously are distinguishable from the one before us. The motion for rehearing is overruled. All concur.