Hazel GUITERREZ, Appellant,

v.

ST. JOSEPH LIGHT & POWER COMPANY,
a Corporation, Respondent.

No. 22356.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1956.

Not to be published in State Reports.

Shultz & Barry, St. Joseph, for appellant.

Sprague, Wilcox & Houts, St. Joseph, for respondent.

DEW, Presiding Judge.

The plaintiff sued the defendant and the operator of one of its trolley busses for personal injuries which she alleged she sustained on September 22, 1952, while a passenger on the bus. At the trial the plaintiff dismissed her action as to the operator. Defendant pleaded a general denial of the material allegations of the petition and alleged contributory negligence on the part of the plaintiff in failing to exercise ordinary care to keep a lookout as to where she stepped and walked at the time and place of the occurrence. The case was submitted on the res ipsa loquitur doctrine. The verdict of the jury was in defendant's favor and the plaintiff has appealed from the judgment entered accordingly.

The plaintiff offered evidence which supported the facts hereinafter stated. She had boarded the bus in question at Sixth and Oak Streets in St. Joseph, Missouri, and had ridden northward to within a block of her destination, when the bus stopped for a few passengers to alight. She then rang the bell for the bus to stop at the next street intersection and arose from her seat and walked to the front exit at the right of the operator. There she stopped and was standing near the floor opening which constituted the exit, consisting of two steps downward. She was holding with her left hand to the vertical bar or pipe which was located south and near the edge of the steps and which extended from the floor to the ceiling of the bus.

According to plaintiff's evidence the bus speeded up after stopping a block south of where she planned to alight and after reaching about the middle of the block north, the bus suddenly stopped and the plaintiff, a woman weighing 260 pounds, was thrown down upon the steps at the exit, alighting on her head and shoulders with her feet extended in the air. The operator helped her up and back to a seat and asked her to go with him in the bus to Fifth and Edmond streets to see the trainmaster. This she did and the trainmaster sent her in a taxicab to the company physician. The physician told her there was nothing the matter with her but later told her to apply hot towels to her neck. At home her arm pained her so that she could not apply hot towels and she suffered so from her injuries that she called her attorney and after that visited another doctor, who then sent her to a hospital. She remained in the hospital three days and was released. She suffered so much

pain when she arrived home that she immediately called the doctor and was at once taken back to the hospital, where she remained about ten days longer. During her hospital stay and afterward she took many kinds of treatments for her condition. She was employed at the time of the accident as a dishwasher in a cafe and had not been able to work since the accident. She later admitted she had worked about four months at the St. Francis Hotel since the accident.

Defendant's operator testified that when he had made the last stop before reaching the place of the accident, he pulled away from the curb and out into the right lane to proceed across the intersection; that the street to the north was a one-way street; that through his center and side mirrors he saw there was no traffic coming at the time; that he was proceeding at about eight or ten miles an hour when an automobile came along his left side and turned sharply into his path, without warning, and turned east at the next corner. He said that when he first noticed the automobile he took his foot off of the power pedal and put it on the brake and stopped his bus within eighteen inches of the automobile. He did not see the plaintiff standing at the exit, nor did he see her fall. His first notice of her was when she began to curse him. He then asked her if she was hurt and requested that she take a seat and said he would take her to Fifth and Edmond streets to see the trainmaster, which he did. He said the bus was in good mechanical condition at the time of the occurrence.

Mrs. Colbert, a colored lady, was on the bus and saw plaintiff go forward to get off. She said that when the bus stopped plaintiff grabbed the pole near the exit and swung around, and then "stepped back up in the bus." She said at no time did she see the plaintiff fall, but that the plaintiff was standing at all times until she sat down on the seat afterwards at the suggestion of the operator. Witness gave her name to the operator and the next day or so the plaintiff called her and asked her to be a witness, to which Mrs. Colbert replied that she was on the bus "but would not be a witness because I didn't know nothing."

Another lady passenger, Dorris Butler, testified that an automobile drove around in front of the bus; that the bus then stopped suddenly; that she was not looking at the plaintiff at the moment but was sure that plaintiff did not fall. She said plaintiff complained that her arm hurt.

J. M. Henze, also a passenger, saw the automobile drive around in front of the bus. He said the bus stopped suddenly and that the plaintiff, standing on the first step of the bus, struck her arm on the rod at the exit. He said that at no time did she "fall on the floor and her feet up in the air."

Certain additional facts in evidence, pertinent only because of the particular points raised, will be related where applicable.

█ Plaintiff first contends that the Court erred in giving defendant's Instruction 1 containing the clause "and if you believe from the evidence that any witness has willfully sworn falsely to any material fact in issue, you are entitled to take that fact, if you find it to be a fact, into consideration in determining the weight you will give to other testimony of such witness." The plaintiff complains that such instruction was a direct assertion by the Court that the evidence justified the jury in finding that some witness had willfully and knowingly sworn falsely to some material fact. She asserts that when that instruction was given "the hunt was on to find a victim guilty of perjury and plaintiff was it." She points to the report of the company doctor to the effect that there was no visible evidence of injury and that plaintiff "was crying and was quite hysterical, and it was my impression that she was more scared and angry than the physical findings justified." She claims she fully explained her statements about the identity of other passengers present, by stating she misunderstood the questions in the deposition. She also contends she fully explained

her testimony regarding previous claims for personal injuries. It has been well settled that the giving of such instruction rests largely in the discretion of the Court. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046. Whether or not the Court in the present instance was justified in giving such instruction or abused its discretion in so doing, requires the consideration of further testimony in the trial.

Plaintiff had testified in her deposition that she never had asserted any claim for personal injuries against anyone before except one for a back injury for which she was paid under the Workmen's Compensation Law. Section 287.010 et seq. RSMo 1949, V.A.M.S. Upon cross-examination she admitted having signed a claim on January 21, 1944, against this defendant and under her then name of Hazel Winsor, and the release therefor and check thereunder for $15 in the same name, such claim being for alleged injuries sustained when she injured her wrist when defendant's bus made a sudden stop on South Sixth Street in St. Joseph, Missouri on the date mentioned. Further, on cross-examination, after having testified that she had never made any other previous claims for personal injuries against anyone she acknowledged that under the name of Hazel Speece she signed a release of a claim against this same defendant on October 4, 1929, for injuries claimed to have been sustained by her as a passenger on the street car on September 7 (presumably in 1929), when the bus collided with a truck at Sixth and Locust streets in St. Joseph, Missouri, and received and endorsed a check to cover that claim from defendant in the sum of $125.

Plaintiff testified that she married her present husband October 20, 1951; that prior thereto she was married to a Mr. Winsor, now deceased, with whom she lived 12 years. Prior to that she had married one Thomas Speece, now deceased, with whom she lived until 1928. Prior to her marriage to Mr. Speece she had married one Bertram in 1916, with whom she lived one month.

When asked in her deposition what was the first name of Mr. Bertram, she replied that she did not remember and said: "You got me, sir. That was so far back." She testified that she did not understand just what was meant by having a claim against anyone, and did not believe that receiving treatments for injuries was making a claim. She said in regard to the release given to the defendant for a claim in 1929, she could not remember getting any money for her injuries at that time nor could she recall having her knee and thigh injured as described in the release.

In her deposition plaintiff testified that she did not know the name of anyone on the bus at the time of the accident. She later testified that a few days after the accident a Mrs. Colbert called at her house and stated that "I saw you fall", but said she would not go to court as a witness. At the trial the plaintiff testified that Mrs. Colbert was on the bus, sitting in the seat three seats back on the east side, and that a few days later called upon the plaintiff. Mrs. Colbert denied that she had ever called at the plaintiff's home, but said the plaintiff called her and asked her to be a witness for her and that witness replied that she would not because "I don't know nothing."

As noted, plaintiff was not corroborated by any witness on the bus that at the time it suddenly stopped plaintiff was thrown off her feet and into the exit area, landing on her head and shoulders with her feet in the air. No witness other than herself testified that she was ever thrown off her feet at all.

▮ Because of the foregoing evidence, we cannot rule that the Court abused its discretion in submitting defendant's Instruction 1 to the jury. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046.

Plaintiff's next point is that the Court erred in giving defendant's Instruction 4. That instruction stated: "The Court instructs the jury that negligence is not in law to be presumed, but must be established

by proof as explained in other instructions." It proceeded further to tell the jury that its verdict could not be based exclusively upon mere surmise, guesswork and speculation, and that if the jury could not find the defendant liable without resorting to such speculation, etc., its duty then was to return a verdict for the defendant. The plaintiff asserts that the words "negligence in law is not to be presumed", ignored the fact that her case was tried on the res ipsa loquitur theory.

It must be noted in this connection that plaintiff's main Instruction 2 had submitted to the jury the issue of whether defendant had *negligently* caused the bus to stop suddenly and violently with unnecessary force and thereby directly resulting in plaintiff's injuries, and the jury was told that if it found such facts to be true it might find that such occurrence was occasioned by some negligence on the part of defendant. Plaintiff cites the case of Harke v. Haase, 335 Mo. 1104, 1110, 75 S.W.2d 1001, 1004. In that case the elements of the res ipsa loquitur theory are set forth and discussed. Among other things it is pointed out in that opinion that in a res ipsa loquitur case some kind of negligence may be inferred "without any evidential facts except the occurrence itself". The opinion explains, however, that plaintiff still has the burden of establishing the negligence although he may do so by circumstantial evidence, namely, that an unusual occurrence took place "of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference".

In the case of West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, the precise situation existed as here respecting the point under consideration. In that case the Court, at the request of the defendant, had given the exact instruction as defendant's Instruction 4 in the present case. There, as in the instant case, complaint was made of the words "negligence

is not in law presumed", the claim being that such expression is improper in a res ipsa loquitur case. The Court said that the instruction should be considered with the other instructions (as, in fact, the instruction here under consideration expressly required). The Court said, 361 Mo. at page 747, 236 S.W.2d at page 312: "When the instruction is so considered, it has this meaning: Negligence is not a presumption of law but it must be proved as explained in other instructions. If, upon all the evidence in the case, including reasonable inferences to be drawn therefrom, the jury is unable to make a finding that defendant is liable, they are not permitted to go *outside* of and beyond the scope of the evidence and reasonable inferences drawn therefrom, and base a verdict for plaintiff entirely and exclusively upon mere surmise, guess work and speculation. If this is the meaning of the instruction (and we think it is), it is a correct statement of the law, in abstract form, and it is not in conflict with the principles stated by this Court in Harke v. Haase, supra. We do not think that the instruction is reasonably susceptible of the meaning that the jury was not entitled to presume (infer) negligence from the *facts in evidence* or that the jury was not permitted to surmise or speculate upon the *facts in evidence* in the process of drawing reasonable inferences therefrom. If the instruction had such meaning, it would come within the condemnation of Harke v. Haase, supra, and Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471, 479."

Under the authority of West v. St. Louis Public Service Co., supra, we hold that the Court did not err in giving defendant's Instruction 4.

Plaintiff next claims error in the giving of defendant's Instruction 5, which read as follows:

"The Court instructs the jury that the burden of proof is upon plaintiff to show by the preponderance or great-

er weight of the credible evidence that she was injured by the negligence of defendant. You should not find that defendant was negligent from the mere fact of the *occurrence shown by plaintiff's evidence*, if you find and believe from all the evidence in the case that defendant was not negligent; and if you do find and believe from all of the evidence in the case that the defendant was not negligent, then your verdict should be for the defendant." (Italics supplied.)

■ Plaintiff maintains that the words italicized ignore plaintiff's Instruction 2, which described the occurrence and told the jury that if it found "such facts" to be true, then it might find from "such facts" that the "occurrence" was occasioned by some negligence of the defendant. We think the words "occurrence shown by plaintiff's evidence" in defendant's Instruction 5 obviously mean the ultimate fact of the plaintiff's fall and injury when the bus suddenly stopped, and have no reference to other facts in evidence on the issue of negligence. The words in question are exactly the same and copied from the form suggested by the Supreme Court in a similar connection in Harke v. Haase, 335 Mo. 1104, 1111, 75 S.W.2d 1001, 1005. They were again approved in Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 1081, 246 S.W.2d 749, 755. We find no merit in the objection made.

■ Plaintiff complains of the giving of defendant's Instruction 6. That instruction in substance told the jury that it was defendant's duty to exercise the highest degree of care for plaintiff's safety and the safety of the operator and occupants, if any, of any other vehicle then traveling on the same street at the time in question. It further told the jury that if it found and believed from the evidence that at the time in question an automobile drove along the left side of the bus and pulled over and into its path so close that the bus was in imminent danger of collision with it, and that the defendant's operator attempted to avoid the collision by bringing the bus to a stop, and in so doing was in the exercise of the highest degree of care, and that defendant was not guilty of any negligence causing or contributing to cause the emergency, nor was guilty of any negligence under all the evidence, then the plaintiff was not entitled to recover and the verdict should be for the defendant. It is argued that the instruction itself convicts the driver of the passing automobile of being guilty of gross negligence and that defendant was not obligated to protect him from injury. It is also claimed that the instruction conflicts with plaintiff's instructions, but it is not pointed out in what respect. It is further claimed that the instruction ignores the testimony of the operator in which he admits negligence. No specifications are furnished in this regard except the citation of four page numbers of the transcript which is insufficient reference for our consideration, and furthermore is a statement of a mere conclusion of the plaintiff. Suffice it to say that the defendant owed to *all* persons the duty of exercising the highest degree of care in the operation of its bus, even to a negligent driver of another vehicle. Nix v. St. Louis Public Service Co., Mo.App., 228 S.W.2d 369.

■ It is also stated that the defendant's Instruction 6 conflicts with the testimony of defendant's witness Henze to the effect that the automobile came up from 6th Street south of Edmond Street and was following the bus. There was ample evidence to support the issues submitted to the jury as to how, when and where the automobile passed the bus. We do not find error in defendant's Instruction 6, as contended.

■ In the plaintiff's brief it is argued that defendant's Instruction 7 was erroneous. However, no such point appears in her Points and Authorities relied on as required by 42 V.A.M.S. Supreme Court

Rules, rule 1.08, and therefore is not properly presented for our review. Jones v. Giannola, Mo.App., 252 S.W.2d 660, 663.

Finding no error materially affecting the merits of this cause, the judgment is affirmed.

All concur.